on by Stillman R. Walker during nearly 11 years. A large amount of assets had undoubtedly come into his possession, and it is plain, from the papers in the case, that a considerable amount of money had passed through his hands as assignee. His proceedings in regard to the trust should certainly be accounted for, and the property which was in his possession as assignee, and which, in the nature of things, would be held by his personal representative until a new assignee was appointed, should be turned over to the new assignee. This should be done, not only that the new assignee may have possession of the assets of the estate, but that the surety of the old assignee should be discharged, as he has a right to be, upon the termination of the trust as to Walker. The order, therefore, should have provided for an accounting by the executor of Walker of the affairs of the assignment, and should have required him to turn over to the new assignee the property of the estate, and for the discharge of the surety when that was done.

The order of the special term must be modified by directing that the executor of Stillman R. Walker shall account, before a referee, to be appointed by the court, with regard to the property and affairs of the assignment, and shall turn over the assets of the assigned estate to the new assignee under the direction of the referee, and, when that has been done, the surety of Stillman R. Walker shall be discharged from further liability; and, as modified, the order should be affirmed, without costs to either party in this court. All concur.

---

SECOND NAT. BANK OF CITY OF NEW YORK v. CURTISS et al.

(Supreme Court, Appellate Division, First Department. March 20, 1896.)

1. FRAUD—WHAT CONSTITUTES.
   One who signs as a witness a purported, but in fact forged, assignment in blank of a certificate of stock, knowing that the assignment is to be used by one not the assignor in obtaining a loan, and that the lender will rely on his signature as a witness, is guilty of such fraud as will render him liable to the lender for the amount loaned.

2. CORPORATIONS—ACTS OF OFFICERS—WHEN BINDING ON COMPANY.
   Defendant's testator, while treasurer of a corporation, signed as a witness a purported, but in fact forged, assignment in blank of stock of the corporation, at request of the company's transfer agent. Testator knew at the time that such agent intended to use it in procuring a loan from plaintiff. Held, that the fact that such testator and agent were officials and agents of the company did not make their acts binding on the company, so as to render the act of such executor harmless as to the lender.

Appeal from judgment on report of referee.

Action by the Second National Bank of the City of New York against Benjamin D. F. Curtiss and another, as executors of the estate of Charles Curtiss, deceased, to recover damages for false representations made by deceased by signing as a witness an assignment to plaintiff of stock in a street-railroad company. From a judgment entered on the report of a referee in favor of plaintiff, defendants appeal. Affirmed.

The action was brought to recover damages for false representations made by the defendants' testator, by his signing as a witness an assignment to the

plaintiff of stock in a street-railroad company. The transaction complained of occurred April 27, 1887. The plaintiff was a national bank, doing business in New York City. The Forty-Second Street & Grand Street Railroad Company was a corporation operating a street railroad in the city. It had been in existence since 1863, and its stock was selling at $210. It was well known to the plaintiff, with whom it kept a bank account. The defendants' testator was president of the railroad company, and one Allen was its treasurer and transfer agent. The certificate of stock which purported to have been assigned bore date May 1, 1872. At that time one Green was president of the railroad company, and the defendants' testator was its treasurer, and Allen was its transfer agent. From 1868 until 1887, Allen kept the stock transfer book, stock ledger, dividend book, and stock certificate book; and these books, with the seal of the company, were kept in his desk. While Green was president of the company, in expectation of going abroad temporarily, he signed a number of blank certificates of stock to be used while he was away when transfers of stocks were necessary to be made, and left them in the possession of Allen, who still had some of them in 1887. May 1, 1872, one Westfall, of Illinois, became the owner of 50 shares of the stock of the railroad company; and a certificate therefor was issued to him at that time, which he continued to hold on the 27th day of April, 1887, and long thereafter, and which he assigned to no one. Allen knew the contents of such certificate, from having issued it himself, and having the books relating to the stock certificates in his possession. Shortly before April 27, 1887, Allen, desiring to procure a loan from the plaintiff, took one of the blank certificates which had been signed by Green as president, and filled it out to correspond with Westfall's real certificate for 50 shares, including the number and date. He put the company's seal upon it, and wrote his own signature to it, as transfer agent, and also wrote the name of defendants' testator thereto, as treasurer. The certificate was then a duplicate of the real certificate, except that the name of defendants' testator was written by Allen, instead of by the testator himself. Allen then wrote Westfall's name as a signature to the blank assignment printed on the back of the certificate. He applied to the plaintiff for a loan of $7,500 on his note, to be secured by this 50 shares of stock. He did not have the certificate with him when he made the application, and he was then told by the plaintiff's cashier that he must have the assignment on the back of the certificate witnessed by some person whose signature was known to the plaintiff. Allen procured one Murray and the defendants' testator to sign the assignment as witnesses to the same, saying that he was going to use the stock for the purpose of a loan. The two witnesses signed at the same time. Allen then took the certificate to the plaintiff. The cashier looked at the signature of the defendants' testator, recognized the handwriting, which he was well acquainted with, and said that would do; and he made the loan to Allen relying on the signature of defendants' testator as such witness. He knew nothing of Westfall or his signature. The note was the ordinary stock note, payable on demand. Green, formerly president, died in 1887, and defendants' testator in 1888. Many irregularities on the part of Allen in respect to the certificates of stock of the company came to light in 1889, and he was indicted, convicted, and sent to state's prison. Nothing was paid upon this note. The plaintiff demanded a transfer of the 50 shares of stock upon the company's books, but it was refused, the real nature of the transaction having become known; and subsequently this action was begun. The signature of Westfall to the assignment made by Allen was not an imitation of Westfall's handwriting. The defendants' testator was more or less acquainted with Westfall's handwriting. The complaint alleged that the attestation of defendants' testator to the signature of Westfall to the assignment on the back of the certificate was wrongful and fraudulent, and was made by the defendants' testator with the intent or knowledge that it should or would be relied or acted upon by the holder or assignee of the certificate. And the referee, in his decision, found that the defendants' testator did state and represent to the plaintiff that Westfall had executed the assignment in the presence of the defendants' testator; that this representation and statement was false, and was known by him at the time to be false, and was made by him fraudulently, and with the intent to deceive the plaintiff; that the

plaintiff relied upon the statement and representation in making the loan, and it would not have been made if plaintiff had not believed the statement and representation to be true; and that the plaintiff had suffered damage thereby in the amount of the loan and interest, and directed judgment for the plaintiff accordingly.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

John A. Taylor, for appellants.

William Allen Butler and John Notman, for respondent.

WILLIAMS, J. The action was based upon the allegation of fraud, and the decision found that there was fraud. The only representation made by the defendants' testator was by means of the act of subscribing his name as a witness to the assignment of the stock. That act was a statement and representation by the testator, in effect, that the signature to the assignment was made by Westfall in the testator's presence, or was acknowledged by Westfall in testator's presence to be his (Westfall's) signature, and that the testator thereupon, at Westfall's request, wrote his name as witness thereto. Such was fairly the meaning of the act in law, and as generally understood in the business community. Greenl. Ev. (14th. Ed.) 569, 569a. It does not seem to us that it could be fairly said that this act implied merely that the testator believed or was of the opinion that the signature of Westfall was his genuine handwriting. Regarding this act as a statement and representation of the facts we have referred to, there can be no doubt but that the conclusion of fraud, so far as it was essential to support the judgment, necessarily followed. The testator stated and represented as facts what he knew to be untrue. Westfall did not sign the assignment in the presence of the testator, nor did he acknowledge the signature to be his; and the testator did not thereupon become the witness thereto, at the request of Westfall. The testator was informed and knew at the time he signed his name as a witness to the assignment that the stock was to be used by Allen to secure a loan of money, and he understood, therefore, that his signature as a witness would be relied upon by the party making the loan as establishing the actual execution of the assignment. Nevertheless, instead of stating the facts truly as they occurred, which would have avoided any injury to the plaintiff, he wholly misrepresented the facts, and thereby brought about the injury and damage complained of in this case.

The only question is whether there was sufficient evidence of an intent to defraud to support the finding of the referee and the judgment entered thereupon. It clearly appears that the defendants' testator made the representations as of his own knowledge, for the purpose of inducing the loan; that is, with knowledge that they were to be made use of to secure the loan, and that they would be relied upon by the person making the loan. The purpose of the testator in thus asserting his own personal knowledge must have been to induce a belief of the facts represented, and the inference of fraud therefore necessarily resulted. This principle of law has been frequently asserted, and is supported by abundant authority.

Andrews, C. J., in Kountz v. Kennedy, 147 N. Y. 124, 41 N. E. 414, said:

"It has been held that one who falsely asserts a material fact, susceptible of accurate knowledge, to be true of his own knowledge, and thereby induces another to act upon the fact represented, to his prejudice, commits a fraud, which will sustain an action for deceit. This is not an exception to, but an application of, the principle that actual fraud must be shown to sustain such an action."

We are of the opinion that fraud was properly found by the referee, so far as necessary to enable the plaintiff to maintain the action.

It is said that no damage resulted from this act of the defendants' testator, because the plaintiff could have enforced against the railroad company its title to the stock; that Allen and the testator were the officials and agents for the railroad company, and acted within the scope of their authority as such in the assignment of the stock to the plaintiff. In Fifth Ave. Bank of New York v. Forty-Second St. & G. St. Ferry R. Co., 137 N. Y. 231, 33 N. E. 378, the act complained of was the issue of the stock itself, and that was clearly within the course of employment of the officers of the company. Here, however, the act which caused the damage was not the original issue of the stock of the company, but was the illegal assignment of stock already issued and held by a stockholder; and this act was not within the scope of the employment of such officers, and was not done as such officers, and was not binding upon the company itself. The damage here resulted solely from the act of the testator himself. The acts of Allen would not have produced the result,—the procuring of the loan from the plaintiff. If the assignment had been really executed by Westfall, it would have carried good title to the 50 shares of stock to the plaintiff, irrespective of the question whether the certificate itself was the one actually issued by the railroad company or not. If the whole certificate had been merely a copy, and not the original at all, still, the 50 shares of stock being really owned by Westfall, his execution and delivery of the assignment on the back of it would have operated to give plaintiff good title to the stock described therein, the same as though the assignment had been written upon the back of the original certificate. The language of the assignment, in effect, was:

"For value received, I hereby sell, assign, and transfer to plaintiff the shares of the within-mentioned stock, and hereby authorize the plaintiff, as attorney, to make the necessary transfer on the books of the company."

It was only necessary to refer to the body of the certificate itself for the purpose of identifying the stock intended to be assigned, and this would be made to appear as well by a copy as by the original certificate, the copy reading precisely the same as the original. The damage, therefore, resulted solely from the invalidity of the assignment, and plaintiff was injured by relying upon the act, statement, and representation that, to testator's personal knowledge, the assignment was executed by Westfall himself.

We conclude that the decision of the referee was correct, and that the judgment should be affirmed, with costs. All concur.