# SILVERMAN *v.* SILVERMAN

No. 2846

January 4, 1930.                                        283 P. 593.

*Ayres & Gardiner,* for Appellant:

*Samuel Platt,* for Respondent:

## OPINION

SANDERS, J.:

In the year 1909, Morris Silverman and Jennie Silverman intermarried in the city of Cleveland, Cuyahoga County, State of Ohio, which city was the marital domicile of the parties during all the time they lived together as man and wife. In the year 1926, Morris Silverman filed in the court of common pleas, within and for Cuyahoga County, in said state, his petition for divorce from his wife, Jennie Silverman, upon the ground of "extreme cruelty" and upon the further ground of "gross neglect of duty." In substance, his petition charged as a first cause of action that the defendant was guilty of extreme cruelty, in that, to wit, ever since their marriage the

defendant exhibited an uncontrollable temper, would go into a rage, slap and otherwise assault plaintiff, would call plaintiff vile and indecent names, and more particularly, in July, 1925, the defendant flew into a rage and dragged plaintiff bodily out of his store, called him vile and obscene names in the presence of their children and other divers persons; that in February, 1925, the defendant drew a revolver and threatened to shoot plaintiff; threatened to obtain acid and blind the plaintiff; that ever since their marriage plaintiff had been in constant fear of his life and bodily harm and that he was obliged to lock his bedroom at night for fear that the defendant would carry out her threats to kill or injure him; that the defendant constantly demanded that plaintiff leave their home under threat to kill or do him bodily harm; that on the 5th day of June, 1926, after the defendant had returned from another city and found plaintiff at their home, she threatened to kill him unless he left the home immediately, and that pursuant to said threats the plaintiff was obliged to leave; that while their children were of tender age the defendant would curse and swear at plaintiff, in their home, and in the presence of said children call plaintiff vile and obscene names.

For a second cause of action, it was alleged that the defendant was guilty of "gross neglect of duty," in that on occasions when the plaintiff would come home late for his dinner, the defendant would refuse to serve plaintiff, and when plaintiff remonstrated with her for her neglect, the defendant would throw dishes and other utensils at him, and plaintiff was forced to cook his own dinner and wash the dishes so used; that ever since their marriage the defendant refused to make the bed of plaintiff and would refuse to do any household duties for plaintiff whatsoever.

The petition alleged that plaintiff was the owner of an undivided interest in certain real estate situate in the city of Cleveland, described in the petition; that the defendant had a dower interest therein. Wherefore, plaintiff prayed that he be divorced from the defendant;

that the marriage contract existing between the parties be declared null and void and both parties relieved therefrom; that he be awarded the described real estate, free and clear from any and all claims of the defendant, dower and otherwise, and for such other and further relief as may be deemed just and equitable.

In response to summons, the defendant answered the petition. She admitted the residence of plaintiff in the city of Cleveland, State of Ohio, for more than one year preceding the filing of his petition; that plaintiff and defendant were married at the time alleged in the petition; that two children were born of said marriage whose names and ages were correctly stated in the petition. She admitted that plaintiff was the owner of the premises described in the petition, but admitted no further. She denied each and every and all and singular the allegations and averments contained in plaintiff's petition except such as were specifically admitted to be true. By way of cross-petition and for cause of action against the plaintiff, the defendant set up her residence; the marriage of the parties; that two children were born to them as the issue of their marriage, namely, Saul, then 17 years of age, and Ralph, then 7 years of age. She alleged that she had at all times conducted herself towards the plaintiff as a good and faithful wife, but that the plaintiff had been guilty of gross neglect of duty towards her, in this, to wit: That for more than three years preceding the filing of his petition for divorce he had absented himself from home almost every evening until the early hours of the following morning; that he had refused and neglected the companionship of the defendant; that he had refused and neglected to come home for meals except on rare occasions; that for about three years he had been infatuated with another woman, whose name she alleged would in due season be disclosed to the court and in whose company he spent more time than in the company of the defendant and their children; that ever since about the 5th day of June, 1926, plaintiff and defendant had been separated by reason of the fact that the defendant

demanded of the plaintiff that he give up the woman with whom he had become infatuated or else leave the defendant; and that in response to said demand the plaintiff chose to give up the defendant rather than the other woman. She alleged that plaintiff was the owner of real and personal property of the value of $150,000, and that for about three years last past, and since he had become infatuated with the other woman, as aforesaid, the plaintiff had been disposing of his real estate and property by transferring the same to other persons and by making investments in the names of other persons so as to place same beyond the reach of the defendant and beyond the reach of the court, in the event of filing of a petition by the defendant for alimony against him. Wherefore, it was prayed that plaintiff's petition for divorce be dismissed; that defendant be awarded alimony during the pendency of the case and that on the final hearing thereof, she be awarded permanent alimony for the support of herself and the above-named two children; that she be awarded the custody of said children; that she be awarded reasonable counsel fees to enable her to properly defend the plaintiff's claim and to prosecute her cross-petition; that the plaintiff be required to disclose the extent and value of his property and the names of the persons to whom he had transferred it; and for such other and further relief as in law and equity she may be entitled. The plaintiff in his answer to the defendant's cross-petition denied each and every allegation contained therein, not specifically admitted. He prayed that the defendant's cross-petition be dismissed and for judgment as demanded in his petition.

Subsequently, the defendant filed in said court and cause a supplemental cross-petition and, with leave of court, made Lydia Woldman and Albert A. Woldman, husband and wife, and one Rose Borstein, defendants in the action, and for cause of action against them alleged that plaintiff was the owner of certain real estate (described), and for a long time prior to the filing of his action for divorce and during all of said time he had been secreting property, both real and personal,

for the purpose of placing the same beyond the reach of the court, well knowing that the defendant would file a cross-petition for alimony, and that in furtherance of said design, plaintiff in the years 1925 and 1926 caused certain real estate to be conveyed to the defendant Lydia Woldman by warranty deed, without consideration; that the plaintiff owned other real estate, but that for the reasons aforesaid he took title thereto in the name of the defendant Rose Borstein, who had no equitable interest in the property and who held the same for the purpose of enabling plaintiff to conceal his ownership thereof and to place such property beyond the reach of the court in the event of judgment for alimony which the court might render in this action. Wherefore, she prayed for injunctive relief against said defendants; that they be ordered to reconvey the premises to the plaintiff and that the same be subjected to any order for alimony that may be made in the action; and for such other relief as in justice and equity the court might deem just and proper. Lydia and Albert A. Woldman filed their joint answer, and Rose Borstein filed her separate answer. Upon issues made, the cause came on to be heard on November 5, 1927, upon the pleadings, the evidence, and the arguments of counsel, and upon consideration thereof said court of common pleas found, among other things, that the defendant, Jennie Silverman, was not guilty of "gross neglect of duty" and "extreme cruelty," as set forth in plaintiff's petition, and that plaintiff was not entitled to a divorce. His prayer for divorce and that the defendant, Jennie Silverman, be barred of her right of dower in plaintiff's property was denied, and plaintiff's petition for divorce was dismissed. It was recited in the decree that: "Coming, now, to consider the cross-petition and the supplemental cross-petition of the defendant, Jennie Silverman, the court finds that the allegations of said cross-petition are true; that the plaintiff has been guilty of "gross neglect of duty" towards the defendant, Jennie Silverman, and that she is entitled to alimony for the support of herself and said minor child,

Ralph Silverman." The court further found that plaintiff was the owner of an undivided one-third interest in certain real estate situate in the city of Cleveland, described in the decree; it was adjudged, ordered, and decreed that the defendants Lydia Woldman and her husband, Albert A. Woldman, convey by good and sufficient deed to the plaintiff said premises. It was further ordered that plaintiff pay to the defendant the sum of $150 per month in installments of $75 each on the 1st and 15th day of each month until the further order of the court; said sum to be for the support of herself and for said minor child, Ralph Silverman. It was further ordered that the defendant pay the expenses of keeping their son Saul in college until the further order of the court. It was further ordered that the defendant have the custody of the child Ralph Silverman, but that plaintiff shall have the right to see him at all reasonable times. It was further ordered that the defendant have a lien on all the real estate of the plaintiff as security for the payment of any and all of the installments provided for in the decree, and it was further ordered that plaintiff pay to the defendant's attorneys the sum of $350 and the further sum of $102 to reimburse them for stenographic services, including the taking of depositions in the action.

Thereafter, the plaintiff filed his petition in error in said court of common pleas for reversal of the decree of dismissal of plaintiff's petition and the granting of the relief prayed in the defendant's cross-petition.

Thereafter, Morris Silverman left the state of Ohio, and on August 28, 1927, came to Reno, Washoe County, Nevada, where he resided for a period of three months. On November 29, 1927, he filed in the Second judicial district court of the State of Nevada in and for the county of Washoe, a complaint against Jennie Silverman for a divorce. In substance, the complaint alleged that plaintiff was a resident of the city of Reno, Washoe County, Nevada, and had been physically and corporeally present within said city, county, and state each and every day for said period of time, to wit, three

months. The complaint set up the marriage of the parties in the city of Cleveland, Ohio, on the 6th day of February, 1909, and alleged that two minor sons were born of their marriage, to wit, Saul and Ralph Silverman. The complaint alleged as follows: "That said defendant, willfully and against the will and consent of plaintiff, deserted and abandoned plaintiff, and for more than one year last past immediately and continuously preceding the filing of the complaint herein, and continued to desert and abandon plaintiff, against his will and consent. That ever since the said marriage the defendant began and continued of and towards the plaintiff a course of extreme cruel and inhuman treatment, which continued unremittingly all the time the parties lived together and which ultimately forced the plaintiff to leave the house and home of the parties, to leave the defendant, and to cease further to live with her."

Following these general allegations, the complaint charged: That in July, 1925, the defendant gave vent to an unusual outburst of temper and in a rage dragged the plaintiff out of a store, called him vile and obscene names in the presence of the children of the parties and other persons; that in February, 1925, the defendant drew a revolver and threatened to shoot the plaintiff; that upon other occasions the defendant threatened to obtain acid and blind the plaintiff, and that for a period of more than eight months, in order to be free from the threats and outbursts of temper and assaults of defendant, the plaintiff had to keep the doors of his room locked; that time and again defendant literally chased him out of the house, and because of defendant's threats and actual assaults plaintiff had been in constant fear of his life; that on May 5, 1926, after the defendant had returned from another city and found the plaintiff at the house and home of the parties, the defendant threatened to kill the plaintiff unless he left the home immediately; that following said threat the plaintiff did leave the house and home of the parties and left the defendant and has never since lived with her; that the

defendant employed detectives to follow the plaintiff and repeatedly accused him of having illicit relations with other women; that because of the acts of extreme cruelty inflicted by the defendant upon the plaintiff, he was ultimately driven from the house and home of the parties and driven from further living with or cohabitating with the defendant; that all said acts and things alleged in the complaint occurred for more than one year immediately preceding the filing of the complaint, and that said acts were willfully and premeditatedly committed by the defendant against the plaintiff's will and consent; and that each and all of said acts, singly and in their entirety, made the married life of the plaintiff unbearable and unendurable, forced the plaintiff to leave the defendant and abandon further marital relations and associations with her, and constituted a willful desertion of the plaintiff upon the part of the defendant and without plaintiff's consent for a continuous period of more than one year immediately and continuously last past. Wherefore, the plaintiff prayed a decree dissolving the bonds of matrimony existing between the parties and that each be permitted to resume the status of unmarried persons.

The defendant appeared and filed a demurrer to the plaintiff's complaint upon the ground that it did not state facts sufficient to constitute a cause of action, which was overruled. Thereafter, on January 23, 1928, the defendant, Jennie Silverman, filed her answer to the complaint in which she denied that the plaintiff was a bona fide resident of Washoe County. She admitted the marriage and that two sons were born thereof, but denied each and every allegation contained in the complaint charging her with cruelty and marital misconduct. Further answering the complaint and in separate paragraphs, the defendant sets up the pleadings and the decree of the court of common pleas within and for Cuyahoga County, State of Ohio, and alleged that said decree was a final adjudication and determination of said cause in the State of Ohio. She prayed judgment on the merits and that it be adjudged and decreed that

the issues between the parties in this case had been adjudicated by said court of common pleas and that the judgment of said court was binding and that the relief given by said court of common pleas, so far as it relates to the custody of the children of the parties and the support of the defendant and said children, be affirmed and judgment be given in this case to the same extent and in the amount as in said court of common pleas and for separate maintenance to the same extent and in the same amount as ordered by said court of common pleas and to all further and proper orders for general relief.

Plaintiff filed his reply to the defendant's answer and "cross-complaint," so called. In his answer he put the defendant upon proof as to and with respect to the proceedings and the decree entered in the court of common pleas within and for Cuyahoga County, State of Ohio, and prayed for the relief demanded in his complaint.

The case was tried without a jury. After a full hearing upon the pleadings and evidence, the court made findings of fact to the effect that the parties intermarried on February 9, 1909; that they were residents of the city of Cleveland, Ohio, during all the time they lived together as man and wife; that the plaintiff at the time of the commencement of this action was a resident of the city of Reno, county of Washoe, State of Nevada, for the period of three months prior to the date of suit; that all and singular the allegations and charges contained in the plaintiff's complaint were true; that the Ohio court was one of competent jurisdiction over the subject matter and of the parties; that the allegations contained in the defendant's first affirmative defense, respecting the proceedings and the decree of the court of common pleas within and for Cuyahoga County, State of Ohio, were true; that the averment contained in the defendant's second affirmative defense, to the effect that in the Ohio court plaintiff as his cause of action therein alleged facts identical with those alleged in the present complaint, was not true; that the allegations contained in the defendant's third affirmative defense, respecting

the Ohio decree in favor of the wife upon her cross petition for alimony, were not true; that the defendant's second and third defenses were not specially pleaded by way of recrimination, bar, estoppel, or res adjudicata; that the defendant's alleged defenses were not established. Upon these findings of fact and the conclusions of law adduced therefrom, it was adjudged, ordered, and decreed that the plaintiff be divorced from the defendant and that the plaintiff pay to the defendant the sum of $150 per month, in installments of $75 each, for the support of herself and their son Ralph Silverman until the further order of the court; that the defendant have the custody of said son with the right to plaintiff to visit him at all reasonable times until the further order of the court; that the plaintiff pay the expenses of their son Saul Silverman in college until the further order of the court. The defendant filed a motion for new trial, which was denied; thereupon, she perfected her appeal from the judgment and from said order.

We shall refer to the parties in both courts as the husband and the wife, respectively. We shall refer to the common pleas court within and for Cuyahoga County as the Ohio court, and to the court below as the Nevada court.

A prolix statement has been made of the Ohio litigation in order to bring into prominence the question of its extraterritorial effect upon the Nevada litigation.

Counsel for the husband insists that the Ohio decree was not conclusive in Nevada as to the issue of the "constructive desertion" by the wife of the husband in Ohio, for the following reasons:

First. That the Ohio decree was not properly pleaded, either as a defense, an estoppel, a bar or res adjudicata. This contention is untenable. It is manifest from her pleadings that the wife sought to rely upon the Ohio judgment legalizing her separation from her husband and awarding her separate maintenance for the support of herself and children, and denying to the husband a divorce upon the ground of cruelty as a defense. The record discloses that upon the trial the proceedings in

the Ohio litigation duly certified were identified and admitted in evidence, and that the trial court found the record to be as alleged in the wife's answer. We are therefore of the opinion that the Ohio decree was sufficiently pleaded and considered. Gulling v. Washoe County Bank, 29 Nev. 257, 89 P. 25; Douglas v. Douglas, 156 Tenn. 655, 4 S. W. (2d) 359; Kelly v. Kelly, 118 Va. 376, 87 S. E. 567.·

It is contended on behalf of the husband in the second place that the Ohio decree was not final, hence the doctrine of estoppel or res adjudicata has· no application. The record discloses that, after the judgment was rendered in the Ohio court against the husband and in favor of the wife upon her cross-petition for separate maintenance, the husband filed his petition in error as provided in Ohio General Code, sec. 12259, to review and reverse the judgment rendered against the husband and in favor of the wife. It is held in Ohio that a petition in error under section 12259, General Code, is a separate and independent proceeding in error, essentially different from a statutory appeal, and is not a continuation and transplanting of the original action in the reviewing court. The distinction is clearly drawn between a proceeding in error and a statutory appeal in the case of Levering v. National Bank, 87 Ohio St. 117, 100 N. E. 322, 43 L. R. A. (N. S.) 611, Ann. Cas. 1913E, 917. In Rogers v. Hatch, 8 Nev. 35, it is held, in substance, that if the original appeal is in the nature of a writ in error, it does not vacate or suspend the judgment appealed from. It was accordingly held in the Ohio case cited that, under the laws and practice of that state, the petition in error does not impair the effect of the judgment as a final determination of the rights of the parties in the Ohio litigation.

It is insisted in argument on behalf of the husband that the wife waived her right to rely upon the Ohio decree by defending upon the merits. This contention is also untenable. Harding v. Harding, 198 U. S. 317, 25 S. Ct. 679, 49 L. Ed. 1066; Kelly v. Kelly, supra.

It is also insisted on behalf of the husband in the

fourth place that the issues in the Ohio case and the Nevada case are not identical, neither in point of time or facts. Hence the defense or plea of res adjudicata, attempted to be established by the Ohio litigation, has no application to the husband's cause of action for divorce in Nevada upon the ground of "constructive desertion." In support of this contention, counsel for the husband seem to rely solely upon the case of Sweet v. Sweet, 49 Nev. 254, 243 P. 817.

The conclusive answer to this contention is that in Sweet v. Sweet there was not present a foreign decree adjudging the wife's separation from her husband without fault on her part, and therefore was not a willful desertion of the husband by the wife, which is the precise issue in the husband's action for divorce in Nevada. We are clearly of the opinion that the issue presented in this action for divorce was identical was that decided in the Ohio litigation for separate maintenance because of the husband's gross neglect of duty, which necessarily involved the determination of the question of whether or not the wife was guilty of desertion as charged in the complaint in the Nevada court.

In Vickers v. Vickers, 45 Nev. 274, 199 P. 76, 202 P. 31, Justice COLEMAN, the writer of the opinion, reviews the cases of Harding v. Harding, supra, and Kelly v. Kelly, supra, which hold that where the wife separated from the husband and obtained a judgment in a court of competent jurisdiction over the subject matter and of the parties, she had left her husband for a justifiable cause, and thereafter in another state the husband brought suit for divorce on the ground of willful desertion, it was error to give him a decree as prayed, since that would deny full faith and credit to the court of the first state.

The case at bar cannot be distinguished in principle from the cases of Harding v. Harding and Kelly v. Kelly. It is manifest, from the proceedings in the Ohio court, that the issue of willful desertion, presented in the case at bar, is identical with the issue of the wife's separation from her husband without fault, presented in her

maintenance suit, upon her cross-petition in the husband's action for divorce upon the ground of "intolerable cruelty." The decree of the Ohio court, in legal effect, established that the separation of the wife from the husband was lawful, and therefore conclusively operated to prevent the same separation from constituting a willful desertion by the wife of the husband as charged in the complaint in this action. This being the case, it follows that the Nevada court, in granting the husband a divorce upon the ground of "constructive desertion" failed to give to the decree of the Ohio court the due faith and credit to which it was entitled, and thereby violated the Constitution of the United States. Harding v. Harding, supra.

The judgment appealed from must therefore be reversed, and the cause remanded for such further proceedings as the parties may be advised.

It is so ordered.

COLEMAN, J.:

The defendant, in addition to denying the allegations of desertion alleged in the complaint, undertook to plead, as an affirmative defense, former adjudication. It is strenuously argued that no such defense was pleaded by the defendant: "First, because the so-called affirmative plea does not plead certain essential facts, and, secondly, because the plea does not show that the same cause of action was involved in the Ohio suit, as is involved in this one, in that, as said, the cause of action in the Ohio suit brought by the plaintiff was founded on "extreme cruelty" and "gross neglect of duty," whereas plaintiff's present suit is founded on "willful desertion."

The affirmative defense shows: (1) That the plaintiff in July, 1926, commenced a suit in the court of common pleas in and for Cuyahoga County, Ohio, to obtain a divorce from the defendant; (2) that said court was at the time of the institution of said suit a court of general jurisdiction in said state, having a clerk and a seal, with jurisdiction in causes for divorce; (3) that the plaintiff

alleged as his cause of action in said suit facts identical with those alleged in the complaint in the instant suit; (4) that the defendant was served with process in said suit on September 23, 1926; (5) that the defendant appeared therein and filed her answer and cross-petition, wherein she denied each and every allegation contained in said petition of plaintiff charging her with marital offenses; (6) that thereafter said cause came on regularly for trial on November 5, 1927, and that thereafter and on December 15, 1927, the said court rendered judgment against plaintiff and in favor of the defendant, wherein it was determined that each and every of the allegations of the plaintiff's petition charging the defendant with marital delinquencies were untrue; (7) that said decree is a final adjudication and determination of said suit.

■ We think the answer and cross-complaint of defendant pleaded all that is necessary to constitute the plea of res adjudicata.

■ Respondent seems to take the position that because of certain matter contained in the prayer of defendant's answer the affirmative defense should not be considered as sufficient. We have often held that the prayer can in no way affect the sufficiency of the matter pleaded; furthermore, the matter goes to the defense on the merits, which is proper. Kelly v. Kelly, 118 Va. 376, 87 S. E. 567.

■ The writer is unable to agree with the contention of respondent that a different "cause of action" is involved in the instant case from that adjudicated in the Ohio court, merely because the suit in the Ohio court was based on "extreme cruelty" and "gross neglect of duty," whereas this suit is founded on "willful desertion."

■■ The true test of the identity of "causes of action," as that term is used in connection with the plea of former adjudication, is the identity of the facts essential to their maintenance. The identity of the causes of action may appear from evidence in the two cases as well as from the pleadings.

■ The authorities agree that when the same evidence supports both the present and the former cause of action, the two causes of action are identical. This view was expressed in the early English case of Kitchen v. Campbell (1772), 3 Wils. 304, the court saying: "You shall not bring the same cause of action twice to a final determination; nemo debet bis vexari, upon this we found our judgment: and what is meant by the same cause of action is when the same evidence will support both actions, although the actions may happen to be grounded on different writs; this is the test to know whether a final determination in a former action is a bar or not to a subsequent action; and it runs through all the cases in the books, both in real and personal actions."

A long list of cases is cited in support of this view in 34 C. J. p. 805, note 14. See, also, 15 Stand. Ency. Proc. p. 504.

■ It is a well-established rule that one cannot by varying the form of an action escape the operation of the principle that one and the same cause of action shall not be twice adjudicated upon the merits between the same parties or their privies. 2 Black on Judgments, sec. 729; 34 C. J. 881, sec. 1289.

The judgment and order are reversed.

DUCKER, C. J.: I concur in the views expressed by Justice COLEMAN.