BANKERS TRUST COMPANY, a Corporation, Appellant,

v.

PACIFIC EMPLOYERS INSURANCE COMPANY, a Corporation, and The Century Insurance Company, Limited, a Corporation, Appellees.

No. 16820.

United States Court of Appeals
Ninth Circuit.

Aug. 24, 1960.

108

Grubic, Drendel & Bradley, Stewart & Horton, Reno, Nev., for appellant.

Bert W. Levit, John B. Hook, Long & Levit, San Francisco, Cal., Hawkins, Rhodes & Hawkins, Reno, Nev., for appellees.

Before STEPHENS, ORR and MERRILL, Circuit Judges.

ORR, Circuit Judge.

Appellant acquired from appellees four policies of fire insurance securing the owner of the Bankers Trust Building in Reno, Nevada, against loss by fire. On or about February 5, 1957, the said building was totally destroyed by an explosion and fire, while the said insurance policies were in full force and effect. The policies had a face value of $290,000, but by specific terms contained in the policies recovery was limited to the actual cash value of the property. Further provisions were to the effect that the amount

of any loss was to be determined by an appraisal should the parties be unable to agree on the value of the property. Such a disagreement developed subsequent to the fire. The appellees then demanded an appraisal under the terms of the policies, and named an appraiser. Appellant named an appraiser, and the parties entered into a written agreement that an appraisal be had according to the provisions of the policies. The two appraisers were unable to agree upon an umpire, also provided for in the policies, and appellant petitioned a Nevada state court to appoint one. The Nevada state court granted the petition and appointed an umpire. Thereafter, the umpire and appraisers fixed the amount of the loss at $175,000. Said award was subsequently confirmed by the state court on petition of appellant, and said court entered its judgment in conformity therewith. The judgment was paid in full.

After accepting payment of the judgment of $175,000 based on the contract of insurance, appellant commenced an independent action in the state courts of Nevada based on alleged fraud in the misrepresentation by appellees to appellant of the value of the policies. The complaint filed in the state court alleged that the four contracts of insurance issued by appellee were obtained through fraud and misrepresentation in the following respect: the policies were represented to be "valued" policies which would pay the full face amount ($290,000) in case of total destruction, whereas they actually provided for paying only the actual cash value of the property at the time of loss. As a result, it is alleged, appellant was damaged in the sum of $115,000, the difference between the face amount and the $175,000 received by way of the appraisal award and state court judgment. Appellant alleged that at all times it claimed the face amount of the policies and refused to sign a release of any further claims it might have against appellees.

The case was removed under 28 U.S.C. § 1441 to the United States District Court for the District of Nevada.

Thereafter appellees answered, denying the fraud and averring that appellant's earlier actions amounted to (a) an election of remedies, (b) an accord and satisfaction, (c) a waiver by plaintiff of any right to assert any further liability of appellees, and (d) an estoppel of the appellant to bring this action (appellees claim they relied on appellant's election of remedies by not appealing the state court judgment). Appellees also set up the defense that the present suit is barred by (a) laches, (b) res judicata and collateral estoppel against the claims asserted, and (c) a provision in each of the insurance policies concerning the time within which suits must be brought:

"Suit. No suit for action on this policy shall be sustained in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

The complaint and answer being filed, appellees moved for a summary judgment and in support of the motion filed an affidavit. Appellant filed an answering affidavit. Thereafter the trial court granted the motion for summary judgment, and in so doing it held: (1) Appellant's actions in agreeing to arbitration, petitioning for the appointment of an umpire and for confirmation of the award, obtaining judgment, and accepting payment thereof constitute an election of remedies barring this action. (2) Said actions constitute a waiver by the appellant of any right to claim any amount in excess of the $175,000 already paid. (3) Said actions estop the appellant from claiming any amount in excess of the $175,000 already paid. (4) The judgment obtained in the Nevada court barred any subsequent action to recover added sums for the same loss. (5) This action is barred by the limitation of action provisions in the policies sued upon.

■ The parties apparently agree that appellant's earlier action in the state court amounted to a suit to enforce the insurance contracts and their appraisal provisions as written. Appellant says

the instant suit may be considered either as an action in tort, for deceit, or as an action in contract, for breach of warranty. However, in oral argument before this court, appellant abandoned the contract contention. An action in contract would require first reforming the contract to include the alleged "face value" provision, and then enforcing such provision. It is clear that such an action is barred, both by the limitation of action provisions in the insurance policies, and by the rule which provides that one who sues on a contract as it is may not later bring a second suit to reform the same contract, since such suits are inconsistent. See Royal Insurance Co., Limited, of Liverpool v. Stewart, 1921, 190 Ind. 444, 129 N.E. 853; Leaksville Light & Power Co. v. Georgia Casualty Co., 1927, 193 N.C. 618, 137 S.E. 817. The trial court's order granting summary judgment against the so-called action in contract was correct, but the entry of a summary judgment insofar as the alleged tort is concerned was error.

■ This being a diversity case removed from a Nevada state court, the law of that state is to be applied to the basic issues presented in this appeal.

### Election of Remedies

■ Where a party who has been injured has a choice of two remedies "so inconsistent that the assertion of one involves the negation or repudiation of the other", a deliberate choice of one with full knowledge of the facts will bar a later attempt to assert the other in a second suit. Barringer v. Ray, 1956, 72 Nev. 172, 178, 298 P.2d 933, 936. Accord State ex rel. Thatcher v. Justice Court of Reno Tp., 1922, 46 Nev. 133, 207 P. 1105; Robertson v. Robertson, 1919, 43 Nev. 50, 180 P. 122, 187 P. 929. However, this doctrine of election of remedies applies only to choosing between different remedies allowed by law on the same state of facts, where the party has but one cause of action, one right infringed, one wrong to be redressed. "The doctrine does not require election between distinct causes of action arising out of separate and distinct facts." 28 C.J.S. Election of Remedies § 3(b), p. 1065 (1st ed. 1941). Accord 18 Am.Jur. 135, El. of Rem. § 11 (1st ed. 1938). It is the law that one who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud. When this happens and the defrauding party also refuses to perform the contract as it stands, he commits a second wrong, and a separate and distinct cause of action arises for the breach of contract. The same basic transaction gives rise to distinct and independent causes of action which may be consecutively pursued to satisfaction. "Thus, an action on a contract induced by fraud is not inconsistent with an action for damages for the deceit; * * *." 18 Am.Jur. 139, El. of Rem. § 14 (1st ed. 1938). "A right of action on a contract and for fraud in inducing plaintiff to enter into such contract may exist at the same time, and a recovery on one of the causes will not bar a subsequent action on the other." 50 C.J.S. Judgments § 676, p. 121 (1st ed. 1947). The courts of many states have recognized the rule that a suit on a contract and a suit for fraud in inducing the contract are two different causes of action with separate and consistent remedies.[1]

■ The two actions which appellant has instituted are entirely consistent, one with the other. Each admits and affirms that the written insurance policies are the actual contract between the parties. If a defrauded party is to be allowed to keep the contract and sue for the

1. Bohn v. Watson, 1954, 130 Cal.App.2d 24, 278 P.2d 454; Union Cent. Life Ins. Co. v. Scheidler, 1892, 130 Ind. 214, 29 N.E. 1071, 15 L.R.A. 89; Chester-Neal Co. v. Generazzo, 1942, 26 A.2d 876, 20 N.J.Misc. 296; France & Canada S.S. Corp. v. Berwind-White Coal Mining Co., 1920, 229 N.Y. 89, 127 N.E. 893, 10 A.L.R. 752; Modern Industrial Bank v. Landwehr, Sup.1952, 112 N.Y.S.2d 36; Randle v. Grady, 1947, 228 N.C. 159, 45 S.E.2d 35; Oben v. Adams, 1915, 89 Vt. 158, 94 A. 506; Barth v. Loeffelholtz, 1901, 108 Wis. 562, 84 N.W. 846.

fraud, the right to keep the contract must include the right to enforce that contract if the other party refuses to perform it. Refusing to perform the contract is a separate wrong from fraudulently inducing it. There is nothing inconsistent in the respective remedies sought for the respective wrongs allegedly committed.

## Res Judicata

■ A judgment on the merits by a proper court operates as a bar not only as to every matter offered and received to sustain or defeat the claim, but as to every other matter which might, with propriety, have been litigated and determined in that action. Wolford v. Wolford, 1948, 65 Nev. 710, 200 P.2d 988. However, res judicata requires identical causes of action. Reno Club, Inc. v. Harrah, 1953, 70 Nev. 125, 260 P.2d 304; Weisheyer v. Weisheyer, 1932, 54 Nev. 76, 6 P.2d 439; Silverman v. Silverman, 1930, 52 Nev. 152, 283 P. 593; Smith v. Gray, 1926, 50 Nev. 56, 250 P. 369. The test of a cause of action for res judicata purposes is the identity of facts essential to maintaining the two suits; if the facts show only one right of the plaintiff and one wrong by the defendant involving that right, there is only one cause of action.[2] The narrow bounds within which the Nevada Supreme Court has applied the doctrine of res judicata appear in Casey v. Musgrave, 1956, 72 Nev. 31, 292 P.2d 1066. In that case the plaintiff had helped the defendant buy a ranch and round up and sell the cattle on it. In 1949 he sued to establish a partnership in the ranch and for an accounting, but he lost on the issue of proof. He then brought suit for the value of his services. The court held that the second suit was not barred by res judicata, saying: "It is not enough, however, that the same circumstances and transactions have, in general, given rise to both cases." 72 Nev. at page 34, 292 P.2d at page 1067.

■ Appellant allegedly had two separate causes of action; it had a right to sue to have the contract performed and a right to seek recovery for any fraud which induced the contract. Entirely different facts are essential to maintaining the two suits. The former required proof of the contract, appellant's performance thereof and appellees' failure to perform; the instant suit requires proof of fraud in the inducement of the contract.

From what we have said it is apparent that there is no estoppel by judgment here.

## Waiver

■ The trial court found that the appellant had waived his right to claim any amount in excess of the amount recovered under the contract. To sustain a waiver of the tort action for fraud, it would be necessary to find either an intentional waiver or a waiver implied by law. An intentional waiver does not appear in the record upon which summary judgment was entered. The complaint and the supporting affidavit of Henry Girola both set out that appellant has at all times claimed the face value of the policies and refused to sign a release of any additional liability. If intention to waive is to be implied from conduct, the conduct should speak the intention clearly. Reno Realty & Investment Co. v. Hornstein, 1956, 72 Nev. 219, 301 P.2d 1051.

In support of a waiver implied by law, the appellees rely on Benz v. Zobel, 1949, 255 Wis. 542, 39 N.W.2d 713, 13 A.L.R. 2d 795. In that case the plaintiff entered into a contract to farm the defendant's land with defendant's machinery, plaintiff to receive 40% of the profits and to pay 40% of the maintenance, etc. on the machinery. The defendant allegedly

---

2. Reno Club, Inc. v. Harrah, supra; City of Reno v. Fields, 1952, 69 Nev. 300, 250 P.2d 140; Miller v. Miller, 1931, 54 Nev. 44, 3 P.2d 1069, 6 P.2d 1117, 11 P.2d 1088; Silverman v. Silverman, supra. Accord Baltimore S.S. Co. v. Phillips, 1927, 274 U.S. 316, 47 S.Ct. 600, 71 L. Ed. 1069; United States v. Pan American Petroleum Co., 9 Cir., 1932, 55 F.2d 753, 781; Restatement of Judgments, § 61 (1st ed. 1942).

represented that the machinery was in good condition, whereas actually it was not; the court there found that the plaintiff discovered this either immediately or shortly after starting performance, and before any loss or expense resulted from the machinery's poor condition. However, in that case plaintiff nevertheless performed the whole contract and entered into another contract with the defendant before bringing suit for fraud. The Wisconsin court said that in so doing plaintiff indicated his intention to stand by the contract and waive all right of action for the fraud. No such intentional waiver is indicated in the instant case. Another theory advanced in the Benz case is that the plaintiff having discovered the fraud before any injury resulted therefrom, his own act in continuing to perform the contract was basically responsible for the subsequent loss, and thus he was deemed to have waived the fraud. Again that element is not present here. In the instant case the appellant had fully performed the contract and the loss was complete before the alleged fraud was discovered. The injury occurred when the building was destroyed with only replacement-cost instead of face-value insurance coverage. At that point the appellant had several alternative remedies available, and its choice of the two-step remedy was not a waiver of the fraud. Some courts have held that continuing to perform a wholly or partially executory contract after discovering a fraud is a waiver of that fraud, although this is a minority rule. See 13 A.L.R.2d 807 ff. (1st ed. 1950). However, the courts asserting the minority rule have not held that a plaintiff waives a fraud by enforcing a contract which he has fully performed before discovering the fraud.

### Estoppel

It is contended that appellant's actions in enforcing the contract estop it from bringing this action. "[Estoppel in pais] holds a person to a representation made or a position assumed where otherwise inequitable consequences would result to another who,

having the right to do so, under all the circumstances of the case, has in good faith relied thereon and been misled to his injury." 19 Am.Jur. 642, estoppel § 42 (1st ed. 1939); see Noble Gold Mines Co. v. Olsen, 1937, 57 Nev. 448, 66 P.2d 1005; Beck v. Curti, 1935, 56 Nev. 72, 45 P.2d 601. An acceptance of a portion of that to which a party is entitled, unless by way of compromise and settlement or accord and satisfaction, is not a bar to the subsequent assertion of a claim for the rest, especially where acceptance is accompanied by a reservation of the remaining rights, or it is manifest that the party doesn't intend to surrender them. 19 Am.Jur. 690, 692 ff., Estoppel § 64 (1st ed. 1942); Biel v. Godwin, 1952, 69 Nev. 189, 245 P.2d 997. The appellant was entitled to enforce the insurance policies as they stood and to bring a separate action for the alleged fraud. There is nothing in the record before us setting forth what, if anything, appellant did by bringing the first action to cause appellees to believe it would not bring this second action; to the contrary, appellant's pleadings and affidavit state that it demanded the full amount and refused to sign a release of all liability after the first judgment. There is no basis for estoppel in pais in this case, and the same reasons we have given in rejecting the claim of estoppel apply in holding that appellees' claim of accord and satisfaction is without merit.

### Limitation Provision of Policies

The policies contain a provision which states, "No suit or action on this policy for the recovery of any claim shall be sustainable * * * unless commenced within twelve months after inception of the loss." While this clause is sufficient to bar appellant's alleged contractual remedy (reformation and suit on the contract), this action in tort for deceit in inducing the contract is not an action on the contract. See White v. Barrow, Tex.Civ.App.1916, 182 S.W. 115. In an action for deceit the parties' rights are not controlled by the terms of the

contract, and an attempt by a contract to restrict the remedy of a party for fraud of the other party which induced the making of the contract is ineffectual. 37 C.J.S. Fraud § 64, pp. 353, 354 (1st ed. 1943); see Lyman v. Romboli, 1936, 293 Mass. 373, 199 N.E. 916.

The statute of limitations for fraud in Nevada is three years. Nevada Revised Statutes, § 11.190(3)(d) (1959). Appellees assert that appellant's claim should nevertheless be barred by laches. However, the Nevada Supreme Court, in Lang Syne Gold Mining Co. v. Ross, 1888, 20 Nev. 127, 18 P. 358, in referring to the three year statute for fraud said, "It is very clear that mere lapse of time, not extending beyond the period fixed in the statute of limitations for commencement of the suit, constitutes no bar to the action." 20 Nev. at page 140, 18 P. at page 363. See also Cooney v. Pedroli, 1925, 49 Nev. 55, 235 P. 637.

We conclude that this case should not be disposed of by summary judgment on the issues of law presented by the motion therefor.

Reversed.