GEORGE L. GIBSON, Respondent, v. D. B. MILN et al.
SAMUEL B. MARTIN, Appellant.

When a mortgagee assigns a note and mortgage as collateral security, and subsequently, either by fraud or mistake, has the mortgage marked satisfied on the record, the same will still be treated as a valid and subsisting mortgage in favor of the assignee as against a subsequent mortgagee with notice.

In such case the prior mortgage would only be sustained so far as to protect the assignee thereof.

An order made by a Court which purports first to be a judgment on demurrer to a complaint, and then shows by a comparison of the recitals of the order and what appears in the pleadings of the case that it was founded on facts which accrued after the filing of complaint, and were only made to appear by the answers, and when there was no trial or admission of the truth of these facts by the plaintiff, cannot be held to be a judgment on the merits so as to bar another action.

A decree dismissing a bill filed to enforce a vendor's lien, even if that decree was final and a bar to any further proceedings to enforce such a lien, would not be a bar to an action of ejectment by the same party. Nor would it deprive the party of the right to avail himself of the benefits of his legal title when made a party defendant in an equitable proceeding.

Whether a vendor's lien as such is or is not assignable, neither the party who contracts to sell land nor his vendee or assignee will be compelled to convey the same to the party who contracted to purchase, until the whole of the purchase price is paid.

Appeal from the District Court of the Second Judicial District, State of Nevada, Ormsby County, Hon. S. H. Wright presiding.

The facts of this case are fully stated in the opinion.

*Thos. E. Haydon* and *J. J. Williams*, for Appellant, Martin.

*R. Clarke*, for Respondent.

The defense of vendor's lien is not available to Martin in this case, for the following reasons:

That point was decided in a former case in a Court of competent jurisdiction, and is *res adjudicata.*

A vendor's lien is not assignable. (1 Leading Cases in Equity, 367–8; 1 O. R. 318; 2 O. R. 383; 14 O. R. 20, 24, 433, 443; 3 Yager, 27; 5 Yager, 205; 6 Howard, Miss. 362; 7 Gill & Johnson, 120, 126, 524–5; 4 Md. Ch. 280.)

A vendor's lien could not be good against Gibson, a subsequent mortgagee, without notice.

The sale being for personal and real property mixed, and the payment being partly to be made in lumber, no lien ever existed. (1 Leading Cases in Equity, 364; Hilliard on Real Property, sec. 11, p. 493.)

Opinion of the Court by BEATTY, J., full Bench concurring.

In this case the plaintiff holds by assignment from T. B. Winston a mortgage on the undivided interest of defendant, Milne, in certain real estate. The defendant, Martin, holds a junior mortgage on the entire interest of Milne & Chedic in the same property. It also appears from the record that Milne bought his interest in the property covered by both mortgages from Elson & Snyder. That he was to pay them five thousand dollars for the interest they sold him in the real estate and certain personal property. That when the payments were made, Elson & Snyder were to make him a deed for the real estate.

Martin has become by assignment and deed the holder of Elson & Snyder's claim for the balance of the purchase money, and also the owner of the fee of the land sold or contracted by Elson & Snyder to D. B. Milne. Plaintiff filed his bill to foreclose his mortgage against Milne's interest in the property therein described. The defendant, Martin, resists the claim of plaintiff, and asks that his claim purchased of Elson & Snyder, and also his mortgage, may be preferred to the claim of plaintiff. He claims that his mortgage should be preferred to that of plaintiff, because the mortgage under which plaintiff claims stands on the record as the mortgage of T. B. Winston, and was marked satisfied and canceled of record by said Winston, and a note made thereof by the Secretary of State of Nevada Territory, prior to the time he (Martin) took his mortgage.

Whilst the proof shows such to have been the case, it is shown by what appears to have been satisfactory evidence to the referee that Martin had notice when he took his mortgage that the Winston mortgage had been marked satisfied by Winston, after he had assigned the same to Gibson as collateral security. That the marking the same satisfied was either a mistake on the part of Winston, or else a fraud upon the rights of Gibson.

If Martin had notice of these circumstances (and we are satisfied the evidence fully sustains the finding of the referee on this point), then he certainly cannot claim any priority over this mortgage. The referee was right, we think, in giving priority to Gibson's mortgage over the mortgage of defendant, Martin. But the most particular and circumstantial evidence, showing that Martin had notice of the fact that Gibson held the Winston mortgage as collateral security at the time Winston marked it satisfied, is that of George W. Chedic. He also proves that the note and mortgage were assigned as collateral for only seven hundred dollars. That the note being for twelve hundred and fifty dollars, Milne, after the assignment to Gibson, paid Winston, in lumber, five hundred and fifty dollars, the difference between the amount of the note and the sum for which it had been pledged as collateral, upon receiving which payment Winston canceled the mortgage. Certainly if the sum advanced by Gibson (seven hundred dollars) was to bear no greater interest than the note pledged, it was not improper for Milne to pay the difference between the sum advanced and the face of the note to Winston, and reserve the seven hundred dollars in his hands for Gibson. If such was the transaction, we do not see on what principle it was that the referee allowed judgment in favor of Gibson for the whole twelve hundred and fifty dollars and interest. It appears to us that seven hundred dollars and interest from the date of the assignment was all to which Gibson was entitled. The record purports to contain all the testimony in the case; if there is any testimony contradicting this statement of Chedic's, it has escaped our observation.

The most important point in this case is as to whether Martin is entitled to be paid the amount of claim he purchased from Elson & Snyder.

When about to introduce his proof on this point, to save time and trouble, the plaintiff made the following admissions:

"Plaintiff then admitted the vendor's liens, set up in defendants' answer, had been purchased by defendant for a valuable consideration from the parties mentioned in defendants' answer; that the amounts thereof were correct, were owing from defendants, Chedic & Milne, at the time they were purchased

by defendant Martin, from Elson & Snyder, Joseph F. Snyder and A. J. Bailey; that said Elson & Snyder, J. F. Snyder and A. J. Bailey were the original locators and owners of the property; had sold the same in several moieties to defendants, Chedic & Milne, upon conditions that at stipulated times said Milne & Chedic should pay them stated sums; when said sums were so paid, that then said Elson & Snyder, Joseph F. Snyder and A. J. Bailey should execute deeds for said property to said Chedic & Milne, and in case of the failure of said Chedic & Milne to make such payments, that then said Elson & Snyder, Joseph F. Snyder and A. J. Bailey should re-enter said premises, and said Chedic & Milne should forfeit their right thereto and to any payments they had made thereon."

These liens plaintiff admitted defendant Martin had duly purchased by deed of said Elson & Snyder, J. F. Snyder and A. J. Bailey, and that the balances set up in defendant Martin's answer were still due from Chedic & Milne to Martin, unless extinguished by an alleged trust which they averred in Martin, in favor of Chedic & Milne, or debarred by the judgment of the Court in the cases of Elson & Snyder, Joseph F. Snyder and A. J. Bailey in this Court against Chedic & Milne, this plaintiff, and this defendant, and others.

In the case of *Gibson* v. *Chedic et al.*, which was tried before the same referee and in connection with this case, we have disposed of the question arising as to the trusteeship of Martin. The only other question then to determine in regard to this branch of the case is, has this claim been disposed of by former judgment in bar ?

In August, 1862, Elson & Snyder filed their bill in equity in the District Court of the Second Judicial District of Nevada Territory, setting forth that they had sold an interest of an undivided third part in and to the real estate now in controversy, and also certain personal property in and about the sawmill, to D. B. Milne, for five thousand dollars; that when the payments were made as per written contract, then that they were to make a deed to Milne for the property. They charged that Milne had not paid all the purchase money, but still owed some twenty-five hundred and seventy dollars, besides interest. They tendered a deed, asked for a sale of the property to sat-

34

isfy their demand, and made various parties who held, or claimed, or were supposed to claim liens on the property, parties to the suit.

Gibson and Martin were the only defendants who appear to have answered. They set up in their answer the very same claims that are now being litigated in this case. Their answers are both in the nature of cross bills, and both ask affirmative relief. Gibson, in his answer, first denies that there is anything due to Elson & Snyder, and avers that their whole contract price for the land was paid and discharged before the filing of their bill. He then sets up his mortgage, and follows this by an allegation that plaintiffs, after the filing of their bill, had assigned all their interest in the subject matter of controversy to the defendant S. B. Martin, and deeded their interest in the land to him—that the said Martin then had the legal title of the land, etc. Gibson also avers that Chedic & Milne were the owners of the property, long and openly in possession, and he had no notice of vendors' liens when he took the mortgage under which he claims. A number of other immaterial allegations are made, and the answer concludes with a prayer for the sale of the property, and a disposition of the proceeds in accordance with his views of the law of the case.

Martin in his answer admits that he had purchased of Elson & Snyder their claim and interest in the land.

By an order of Court the case of *Elson & Snyder* v. *D. B. Milne et al.*, after being consolidated with the cases of *Joseph F. Snyder* v. *G. W. Chedic et al.*, and *A. J. Bailey* v. *G. W. Chedic et al.*, was referred to W. H. Brumfield, Esq., to hear and determine the same. Subsequently the Court, without setting aside the reference, made the following order: "*Snyder & Elson* v. *D. B. Milne et al.*, and *J. F. Snyder* v. *Geo. W. Chedic et al.* The demurrer in the above causes having been submitted at a former day, and it appearing to the Court from an examination of the pleadings in said suits that said suits are based upon vendors' liens, that said liens have been transferred to one Samuel B. Martin, who appears as the real plaintiff in said actions, and the Court holding that no transfer of such lien can be made, it is, therefore, now ordered that the two suits above named be and the same are hereby dismissed at

plaintiff's costs.   George Turner, Judge Second Judicial District Court, N. T."

This is claimed to be a judgment in bar of Martin's right to recover the claim assigned to him by Elson & Snyder. The only demurrers filed in the cases wherein this order is made are the demurrers to the complaints.   The complaints do not show that the vendors' liens, as they are termed in this order, were assigned.   The assignments took place as is shown both by the answer of Gibson and Martin after the complaints were filed.

This order to dismiss the cases upon the happening of an event subsequent to the filing of the complaints, an event which is made apparent to the Court by the filing of the answers, and not by the allegations of the complaint, is called a judgment on demurrer.

The different demurrers interposed by several defendants were filed in the three suits at dates ranging from August to November, 1862.   The answers were filed at dates ranging from May, 1863, to December, 1863.   This order was made in January, 1864, apparently without trial, without revocation of the order submitting the case to a referee, and professedly upon demurrers which had apparently been abandoned by the parties filing them, for the same parties who demurred in 1862 answered in 1863.   An order thus made cannot be held to be a judgment on the merits which can be pleaded or proved in bar of another action.   But admitting it is a judgment of some sort, it only amounts to this : that by the judgment of that Court a vendor's lien was not assignable, and therefore a bill to enforce such lien would not be entertained, but was dismissed.   The order of dismissal is made especially on this point.   This, then, might be held a bar to proceedings by the same parties, or their privies, to enforce a *vendor's* lien as such.   But if the plaintiffs in that action had the legal title, and conveyed that title to Martin, would it be any defense to an action of ejectment to say a Court of competent jurisdiction in a suit between the same parties had decided that a vendor's lien was not assignable.   It appears to us that such a proposition is absurd. Elson & Snyder are admitted in this case to have had what must be considered the legal title (that is, all the title one can

have in public land); they never parted with that title until they conveyed it to Martin.   Martin is in possession under a legal title, and cannot be deprived of that possession until the parties who contracted to purchase of Elson & Snyder or their mortgagees shall have paid the purchase price.   The defendant Martin, in his answer in this case, says he purchased of Elson & Snyder their vendor's lien, but other averments in the answer and the admissions of plaintiff that are on record, show clearly what he did purchase, to wit:  The fee of the land subject to the contracts for conveyance to Milne when he made certain payments.   This is not a vendor's lien in the ordinary sense of that term, and the question does not arise whether such lien is or is not assignable.   Nor does it make any difference that a part of the money agreed by Milne to be paid Elson & Snyder was for personality and not for the land. The written contract between the parties shows that Elson & Snyder were not to convey the land until the whole was paid.

A Court of Chancery will not compel them, or one holding under them, to make a deed or surrender the possession until the whole five thousand dollars and interest is paid.

The decree must be reversed.   The Court below will decree the sale of the property, and payment out of the proceeds of the costs of this suit, and the charges of making this sale; next, what is due to Martin as the successor in interest of Elson & Snyder, and provide for the payment of this amount, if the sales of the property amount to so much; third, the Court will ascertain the true amount due to Gibson, that is, whether there is seven hundred dollars and interest, or twelve hundred and fifty dollars and interest, and decree the payment of this next after the claim of Martin derived from Elson & Snyder.   Fourth, if any surplus is left after paying these claims, that it shall be applied as a credit on the mortgage executed by Chedic & Milne to Martin.   Provided, that if there is more than enough to pay half the amount due on the Chedic & Milne mortgage, only one-half the amount due upon said mortgage shall be paid out of this fund, and the balance paid into Court to abide the future order of that Court.