McCRAY REFRIGERATOR COMPANY, INC., AN INDIANA CORPORATION QUALIFIED TO DO BUSINESS IN THE STATE OF NEVADA, APPELLANT, *v.* YUKIO URAMOTO AND GILBERT SUTTON, RESPONDENTS.

No. 4592

June 17, 1963                                         382 P.2d 600

*Goldwater, Taber and Hill,* of Reno, for Appellant.

*Laxalt, Ross and Laxalt,* of Carson City, for Respondent Uramoto; *James Johnson, Jr.,* of Reno, for Respondent Sutton.

## OPINION

By the Court, BADT, C. J.:

When a witness attests the signature of a guarantor on a guaranty of payment for equipment to be delivered to a purchaser, knowing that the seller would not deliver the equipment without such attestation, and the signature on the guaranty proves to be a forgery, with a resulting loss to the seller, may the seller recover the loss from the attesting witness? The learned trial judge, trying the case without a jury, under the facts recited infra, answered this question in the negative, and the seller has appealed.

As described in the trial judge's opinion, the negotiations and eventual acts of the parties to the action arose as follows:

"In June or July of 1959, the Blue Ribbon Market, a corporation, through its officers commenced negotiations with the local office of Commercial Credit Corporation

for the financing of certain market equipment then being undertaken with the plaintiff herein. These negotiations covered a period of several months culminating in an agreement in late September 1959.

"During the negotiations, a contract of sale duly signed by the Market * * * together with credit reports on the Mercury Cleaners of Carson City, Yukio Uramoto, Thomas Uramoto and a proposed written guaranty were sent to the California office of the Commercial Credit Corporation for approval. * * * The form of the guaranty as presented on this occasion was not acceptable and a new one was subsequently required. Commercial Credit Corporation did not rely upon the 'guaranty' and returned it to Yukio Uramoto. * * *

"Thereafter a printed guaranty form * * * was submitted to the local office of Commercial Credit Corporation by defendants Gilbert Sutton and Thomas Uramoto, bearing the signature 'Yukio Uramoto' and witnessed by Gilbert Sutton. Yukio Uramoto has denied the validity of his signature and that he authorized his brother Thomas Uramoto to sign his name to Exhibit D. Likewise, it was admitted at the trial that Yukio Uramoto did not in fact sign [the second guaranty] and that Thomas Uramoto did in fact sign his name."

The lower court first disposed, adversely to plaintiff, of plaintiff's contention that Thomas Uramoto was the authorized agent of his brother Yukio Uramoto and ordered the entry of judgment in favor of Yukio and against the plaintiff. The correctness of the trial judge's ruling in this respect is not questioned by appellant in this appeal.

The second instrument of guaranty is a complete printed form of letter addressed to Commercial Credit Corporation under which the guarantor "unconditionally guarantee[s] to you the full and prompt performance by Blue Ribbon Market, Inc. * * * of all obligations which obligor presently or hereafter may have to you and payment when due of all sums presently or hereafter owing by obligor to you, and agree[s] to indemnify you against any losses you may sustain * * *." Sundry conditions and terms of the obligation are then set forth

in detail. It then bears the apparent signature "Yukio Uramoto" and, opposite the same, the words "(Witness) Gilbert Sutton." It is admitted that Thomas signed Yukio's name and it is also admitted that Sutton signed as the witness.

The court then recites the following:

"[I]t is claimed that defendant Gilbert Sutton is responsible in fraud and deceit for the damage caused Commercial Credit relying upon Sutton's representation as a 'witness.' A review of the testimony in this instance would indicate that Gilbert Sutton was the major stockholder in the building which housed the Blue Ribbon Market and that as such he was interested in obtaining a tenant who would be able to operate a market."

The manager of the local branch of Commercial Credit Company testified to the closing of the transaction involving the sale of the market equipment to Blue Ribbon Market, Inc., by McCray Refrigerator Company for $46,241.57, less a down payment, leaving a balance of $40,544.00, the insistence upon the execution of the guaranty, the guaranty bearing the signature of Yukio Uramoto, with the signature of Gilbert Sutton as a witness thereto; that he knew Sutton for many years and that it was not out of the ordinary to accept a signature witnessed by a person known to him; that the plaintiff relied upon the guaranty and that the contract would not have been made if the guaranty had not been tendered; that it was with reliance upon the fact that the guaranty was signed by Yukio Uramoto that the equipment was sold to Blue Ribbon.

Sutton, called as an adverse witness by the plaintiff, admitted that Yukio did not sign the guaranty in his presence but justified his signing as a witness as follows: "I called him before I went to Commercial Credit and asked him if he would sign the document, and he told me that the document had been presented to him by his brother, that he had signed them, and on that reliance I affixed my signature." Later he was asked, "if it was not your intention, when you signed that document, to indicate to Commercial Credit and the McCray Refrigerator Company, that Yukio Uramoto had signed

this document. A. It was my intention to convey that impression. Q. And that, in fact, Yukio had signed the document? A. That's right. It was my impression. Q. And it was your intention, in delivering the document, was it not, that the McCray Refrigeration Company and the Commercial Credit Corporation [act] and [reply] on this document? A. I would say so. The thing was honest and authentic."

Later Sutton described his telephone call from Reno to Yukio at Carson City as follows: "He answered the phone, and I asked him if the thing had been signed. And he said: 'I signed everything, and Tommy has them, and will deliver them into the hands of Commercial Credit in the afternoon.' * * * Q. All you can specifically recall was that the name of Yukio Uramoto appeared on the instrument? A. That's right. And that is why I affixed my signature to it."

Blue Ribbon continued in business about six months and then went through bankruptcy. The equipment was resold, resulting in a net loss to appellant of $17,134.40 plus $310.26 in non-taxable costs allowable under the terms of the contract of sale.

The court said: "Defendant Sutton seems to not question the law cited by plaintiff, but says that those citations are not applicable because Sutton was acting in good faith, that he ascertained through Yukio Uramoto that something had been signed, which he assumed was the guaranty, and that in any event, he acted without recklessness or negligence, when he did everything to ascertain the truth short of making a special trip to Carson City to actually see Yukio Uramoto's signature. * * * Therefore, it seems to be conceded that if defendant Sutton had known the true facts as found herein but nevertheless signed as a witness to the signature 'Yukio Uramoto,' then he would be responsible; all other legal factors being present. It is likewise true that 'false statements, which are made recklessly, without knowing or caring whether they are true or false, will support an action of deceit.' In our case I do not find the necessary elements present which would justify liability being assessed against Sutton for I think it must be conceded

that he did make a telephone call to Carson City before signing the guaranty as a witness and if we are to believe his uncontradicted testimony, he could very well have relied on and in fact did rely on, so far as the record discloses, what Yukio Uramoto told him as to a signature. * * * [I]t is my opinion that Sutton made every reasonable attempt to ascertain the truth and that it is quite possible Yukio Uramoto and Sutton were honestly talking about different documents. * * *"

It is therefore apparent that the court found that the "necessary elements" that were lacking were (1) false statements, made recklessly, without knowing or caring whether they were true or false, or (2) the lack of a reasonable attempt to ascertain the truth, or (3) possibly such an element as malice or bad faith or intentional injury. We must at this point recall again that the deceit relied upon was Sutton's representation that he had seen Yukio sign.

"Words which in terms promise * * * the existence * * * of a present or past state of facts, are to be interpreted as a promise or undertaking to be answerable for such proximate damage as may be caused by * * * the nonexistence of the asserted state of facts." Restatement, Contracts § 2(2). "A promise which the promisor should reasonably expect to induce action * * * of a definite and substantial character on the part of the promisee and which does induce such action * * * is binding if injustice can be avoided only by enforcement of the promise." Id. § 90. Every element thus described was present in the instant case. Other elements might magnify or exaggerate the wrong, or even be actionable in themselves, but their absence is not fatal in a cause of action for deceit.

In Annot., 32 A.L.R.2d 184, entitled "Misrepresentation as to financial condition or credit of third person as actionable by one extending credit in reliance thereon," hundreds of cases are cited fixing actionability. Here the problem is far narrower, far simpler, far easier of determination. McCray Refrigerator Company and Commercial Credit Company had checked the credit standing of the parties involved, had refused to extend the necessary

credit to Blue Ribbon Market, had agreed to finance the purchase of the equipment if guaranteed by Yukio Uramoto. All they insisted upon was Yukio's authenticated signature on the particular instrument of guaranty. They had rejected the first letter of guaranty, drawn by Yukio himself, and returned it to him. When the second guaranty was presented bearing the signature "Yukio Uramoto," witnessed by Sutton, they were satisfied and acted upon it. Sutton was well known to them. He signed as a witness to Yukio's signature with the intention that they act upon it.

Accepting the definition of "witness" given in Black's Law Dictionary (1891 Ed.) as "One who sees the execution of an instrument, and subscribes it, for the purpose of confirming its authenticity by his testimony," or, "To see the execution of, as an instrument, and subscribe it for the purpose of establishing its authenticity." (Id. 4th Ed.)[1] Sutton's signing as a witness to Yukio's signature was equivalent to his stating that he saw Yukio sign it. This was false and Sutton knew it was false. He did not indicate to McCray or Commercial Credit that his statement was based on a telephone conversation at which the signed instrument could not possibly have been before both parties. If, as the court felt, Sutton had done everything he could, "short of going to Carson City," a distance of 29 miles (driving time less than an hour), that was the one step essential to his witnessing Yukio's signature. Its failure left him 100 percent "short" of justification for his signature as a witness. If the necessary element that the learned trial judge found to be lacking was Sutton's "intent to deceive," that element was present in Sutton's representation that he saw Yukio sign. He did not see Yukio sign. Yukio never did sign the instrument.

[1] We may omit the alternative definition, sometimes given, as one to whom the signer acknowledged his signature, because the telephone conversation between Sutton and Yukio, and the court's finding as to the uncertainty of the document which the parties were discussing, and the absence of the document itself from their vision or actual contemplation, remove such "acknowledgment" from serious consideration.

The precise question posed at the beginning of this opinion finds little in the way of judicial answer in this century. However, two cases decided, respectively, in 1896 and 1897 are directly in point.

In Mendenhall v. Stewart, 18 Ind.App. 262, 47 N.E. 943, Mendenhall signed as a witness to the signature of one Hoover upon an instrument guaranteeing payment for all goods purchased by one Eilar. Stewart, relying on the genuineness of the guaranty, advanced credit to Eilar, who proved to be insolvent. Mendenhall, though signing as a witness to Hoover's signature, did not see Hoover execute it, as, indeed, Hoover had not in fact executed it. A cause of action for conspiracy was involved in the case, but is not of interest in this appeal. Stewart sought and obtained relief directly against Mendenhall for his false representation that he had witnessed Hoover's signature. The court said: "It appears that at the time the letter was presented to appellee it had not been signed by Hoover, although his name was attached to the letter, and the signature was witnessed by Mendenhall. The witnessing by Mendenhall of the signature made none of the statements in the letter his statements. His liability arises from attesting a signature that had never been made, and thus empowering a person to purchase goods upon a letter that had never been authorized. The complaint alleges that Mendenhall attested the signature of Hoover when he knew that Hoover had not signed the letter of credit and guaranty, and when he knew that the statements in the letter were false. It cannot be said that this is in effect, an oral representation of the solvency of Eilar. It is not sought to recover for any loss resulting from the fraudulent representation as to the solvency of Eilar, but appellee seeks in her complaint to recover the price of the stock of drugs obtained from her by fraud.

"The only representation made by Mendenhall was by means of the act of subscribing his name as a witness to the signature of Hoover. The legal effect of Mendenhall's act was that he had seen Hoover sign his name, and at the request of some one (presumably Hoover) he

had signed the letter as attesting witness. Greenl. Ev. (15th Ed.) 569, 569a. By that act, under the allegations of the complaint, he represented as facts what he knew to be untrue. It is further alleged that at the time of such alleged attestation he knew that the letter was to be used by Eilar for the purpose of obtaining goods from appellee. Had he stated the facts as they really were, the loss to appellee would not have resulted; but by a misrepresentation of the facts the loss occurred."

Elsewhere in the opinion the court quotes an earlier Indiana case, Kirkpatrick v. Reevies, 121 Ind. 280, 22 N.E. 139, citing the rule as follows: " 'An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the person who makes it knows it to exist, and speaks from his own knowledge. If the fact does not exist, and the defendant states of his own knowledge that it does, and induces another to act upon his statement, the law will impute to him a fraudulent purpose.' "

To similar effect is the holding in Second National Bank v. Curtiss, 2 App.Div. 508, 37 N.Y.S. 1028 (N.Y. 1896), in which recovery was sought and obtained from the defendants for the act of their testator in witnessing a signature to a forged assignment of a certificate of stock. The testator knew that the stock was to be used as security for a loan and that his signature would be relied upon by the lender as establishing the actual execution of the assignment. Suit was for the resulting loss. The court said: "The only representation made by the defendants' testator was by means of the act of subscribing his name as a witness to the assignment of the stock. That act was a statement and representation by the testator, in effect, that the signature to the assignment was made by Westfall in the testator's presence, or was acknowledged by Westfall in testator's presence to be his, Westfall's signature, and that the testator thereupon, at Westfall's request, wrote his name as witness thereto. Such was fairly the meaning of the act in law, and as generally understood in the business community. Greenl.

Ev. (14th Ed.) 569, 569a. It does not seem to us that it could be fairly said that this act implied merely that the testator believed or was of the opinion that the signature of Westfall was his genuine handwriting. Regarding this act as a statement and representation of the facts we have referred to, there can be no doubt but that the conclusion of fraud, so far as it was essential to support the judgment, necessarily followed."

In an article entitled "Liability for Honest Misrepresentation," in 24 Harvard Law Review 415, by Professor Samuel Williston, the author says (id. 435) :

"The inherent justice of the severer rule of liability which in some cases at least holds a speaker liable for damages for false representations, though his intentions were innocent and his statements honestly intended, is equally clear. However honest his state of mind, he has induced another to act, and damage has been thereby caused. If it be added that the plaintiff had just reason to attribute to the defendant accurate knowledge of what he was talking about, and the statement related to a matter of business in regard to which action was to be expected, every moral reason exists for holding the defendant liable."[2]

The judgment in favor of Sutton is reversed with costs, and remanded to the district court with instructions to enter judgment in favor of appellant and against respondent Sutton in accordance with this opinion.[3] The judgment in favor of respondent Yukio Uramoto against appellant for costs is affirmed.

MCNAMEE and THOMPSON, JJ., concur.

---

[2]See the entire article in which the author traces the history of actions for deceit or misrepresentation. See also treatment of the subject in 23 Am.Jur., Fraud and Deceit § 128, at 921.

[3]It was stipulated that appellant's damages were in the sum of $17,134.40. An additional item of $310.26 was claimed in non-taxable costs but allowable under the provisions of the conditional sale contract. This item must be determined by the trial court in accordance with the evidence submitted at the trial.