BILL YONEMA TOMIYASU, KIYO TOMIYASU, AND UWAMIE TOMIYASU, APPELLANTS, *v.* RICHARD GOLDEN AND AUDREY Y. GOLDEN, HUSBAND AND WIFE, RESPONDENTS.

No. 4819

March 30, 1965      400 P.2d 415

[Rehearing denied April 28, 1965]

*Harry E. Claiborne*, of Las Vegas, for Appellants.

*Babcock & Sutton*, of Las Vegas, for Respondents.

## O P I N I O N

By the Court, BADT, J.:

In 1959 appellants executed a second deed of trust to Nevada Title Company to secure the payment of $13,564

to certain persons who then assigned the note and deed of trust to The First National Bank. Such deed of trust was subject and subordinate to a first deed of trust in the sum of $38,968.29. Appellants being in default of required payments under the second deed of trust, The First National Bank, beneficiary, instructed the trustee to proceed to sell the property under the powers of the second deed of trust. At the public sale, held pursuant to the required notice, the respondent Goldens bid in the property for $18,025.73. The actual amount owing The First National Bank at that time was $18,024.73.

Appellants filed action in the lower court to set aside the foreclosure sale and to cancel and annul the deed executed pursuant thereto. Respondents answered with general denials, and also pleaded as a special defense judgment in their favor in a prior action and alleged that such prior judgment was res judicata to the second action. The trial court granted a motion for summary judgment in favor of the Goldens, and the Tomiyasus appealed. No other persons are parties to the present appeal.

This matter was before this court in Golden v. Tomiyasu, 79 Nev. 503, 387 P.2d 989, decided December 23, 1963. In that action we reversed the judgment of the trial court which set aside the foreclosure sale. The purport of our opinion there was simply that mere inadequacy of price without proof of some element of fraud, unfairness, or oppression that could account for and bring about the inadequacy of price was not sufficient to warrant the setting aside of the trustee's sale on foreclosure of a deed of trust. The Goldens and the Tomiyasus on this appeal are represented by the same counsel that represented them in the former appeal.

In the former case Nanyu Tomiyasu had been an additional party to the three Tomiyasus who are the plaintiffs and appellants here.

The Goldens were the sole defendants and the successful appellants in the first suit.

In addition to the two Goldens, the following were defendants in the present case in the court below: Nevada Title Company, United Mortgage Company,

Lester H. Berkson, Hector J. St. Pierre, Merle P. Adams; David P. Boyer, and sundry fictitious defendants.

Appellants assign as error (1) the granting of the summary judgment because the defense of res judicata does not apply, as the present complaint involves a different cause of action than was sued on and litigated in the former suit; (2) that the bar of res judicata does not apply to the present complaint because of lack of identity of parties; (3) because there are genuine issues of material fact to be determined, including the issues as to the scope and coverage of the former case; (4) because respondents are estopped from raising the bar of res judicata. In these assertions appellants clarify their position by arguing that the cause of action in the first case was in equity to set aside a foreclosure sale because of irregularities in that sale and was not based upon fraud, while the complaint in the second action is for damages based entirely upon fraud. They assert that under such circumstances res judicata cannot exist by reason of numerous decisions of this court, particularly Bond v. Thruston, 60 Nev. 19, 98 P.2d 343, 100 P.2d 74; Casey v. Musgrave, 72 Nev. 31, 292 P.2d 1066; Reno Club, Inc. v. Harrah, 70 Nev. 125, 260 P.2d 304, and other cases.

In Bankers Trust Co. v. Pacific Employers Ins. Co., 282 F.2d 106, the United States Circuit Court of Appeals for the Ninth Circuit had occasion to consider the Nevada cases involving the plea of res judicata. Curiously enough, the opinion was written by Judge Orr, formerly a chief justice of this court, and concurred in by Judge Merrill, likewise a former chief justice of this court, and the author of the opinion in Reno Club, Inc. v. Harrah, 70 Nev. 125, 260 P.2d 304, and of the opinion in Casey v. Musgrave, supra. Appellants do not question the general rule as there stated:

"A judgment on the merits by a proper court operates as a bar not only as to every matter offered and received to sustain or defeat the claim, but as to every other matter which might, with propriety, have been litigated and determined in that action. Wolford v. Wolford, 1948, 65 Nev. 710, 200 P.2d 988. However, res judicata requires

identical causes of action. Reno Club, Inc. v. Harrah, 1953, 70 Nev. 125, 260 P.2d 304; Weisheyer v. Weisheyer, 1932, 54 Nev. 76, 6 P.2d 439; Silverman v. Silverman, 1930, 52 Nev. 152, 283 P. 593; Smith v. Gray, 1926, 50 Nev. 56, 250 P. 369. The test of a cause of action for res judicata purposes is the identity of facts essential to maintaining the two suits; if the facts show only one right of the plaintiff and one wrong by the defendant involving that right, there is only one cause of action. The narrow bounds within which the Nevada Supreme Court has applied the doctrine of res judicata appear in Casey v. Musgrave, 1956, 72 Nev. 31, 292 P.2d 1066."

Appellants contend that under Casey v. Musgrave, supra, it is clear that res judicata could not apply, as their first cause of action was in equity and their second cause of action was for damages based on fraud. We think there is no analogy between the two cases. Musgrave lost his first suit against Casey because he could not prove a partnership or a joint venture as alleged. His second suit was for the recovery of the value of his services rendered to the defendant. This case simply indicates that this court will not only consider whether the facts are identical in both actions, but also whether these facts show only one right of the plaintiff and one wrong by the defendant involving that right.

An examination of the pleadings in the two actions involved here casts light upon the situation.

The allegations of the complaint in the first suit were that the foreclosure sale was "fraudulent, wrongful, illegal, void and unconscionable"; the appellants alleged (1) a number of procedural irregularities, including a defective notice of sale, defective pronouncements of postponements of the sale, and the manner in which such sale was conducted, (2) a grossly inadequate price secured, and (3) that the officers of the Nevada Title Insurance Company and the Goldens "conspired and confederated together to sell said land at a grossly inadequate price * * * and knowing full well that there would be no public bidders present * * * and that there would be no competition in bidding, solicited the Goldens to be

present and bid the exact amount due and owing on said obligation, which the Goldens did," and knowing that the value of the property was in excess of $200,000, "did give further aid, comfort and assistance to said conspiracy."

Appellants quote our language in Golden v. Tomiyasu, appearing at 79 Nev. 513, 387 P.2d at 994, reciting: "In the present case counsel for respondents, in oral argument, stated that he did not claim fraud or conspiracy *but only collusion* between the trustee and the high bidder. This did not exist." (Emphasis supplied.)

We quoted Schroeder v. Young, 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721, referring to mere inadequacy of price as being insufficient in itself to justify setting aside a judicial sale but that it may be set aside if one of a number of conditions exist, one being "if the sale has been collusively, or in any other manner, conducted for the benefit of the purchaser." Finally, we held: "Nothing in the case warrants a conclusion of collusion to defraud the Tomiyasus." 79 Nev. at 517, 387 P.2d at 996. Webster defines "collusion" as "1. A secret agreement and cooperation for a fraudulent or deceitful purpose; deceit; fraud. 2. Law. An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law."

We are then asked to distinguish the present action as one for damages growing out of fraud from the first action which was simply one to set aside a foreclosure sale because of irregularities. In effect plaintiffs are saying that in the first suit they alleged only once that the foreclosure sale was fraudulent, wrongful, illegal, void, and unconscionable, and that the Goldens and the Nevada Title Insurance Company conspired and confederated together to sell the land at a grossly inadequate price and that the trustee gave further aid and comfort and assistance to the conspiracy, and that the court below held only that the actions of the trustee in advising the successful bidders and by reason of their conduct and relationship with the bidders were such as to indicate a breach of the trustee's duty. As against this, appellants apparently feel that because in the present

complaint they have alleged fraud, conspiracy, unlawful combination, fraud, fraudulent acts, and similar terms, some 40-odd times in their complaint, they have alleged such a tremendous fraud as did not appear in their first complaint. We are asked, as it were, to distinguish the present action from the first one because, if we place in the scales the allegations of fraud in the second complaint as against the allegations of fraud in the first complaint, the second one greatly outweighs the first. We cannot avoid the conclusion that in both actions fraud was the basis of the relief sought. As noted above, this court's holding in the first case was that nothing in the case warrants a conclusion of collusion to defraud the Tomiyasus. This included the allegation of the trustee's breach of its trust.

If we turn to the facts we find the same result. In the second case below the plaintiffs had secured a temporary restraining order and a temporary amended restraining order restraining interference by the defendants with the plaintiffs' possession of the property. In its ruling on the motion of defendants Golden to dissolve the amended temporary restraining order, the court reviewed the history of the first case and of the posture of the second case then before it, and said:

"There is no gainsaying that the Defendants Golden have now twice been charged with conspiracy, the first time with having conspired with the trustee and here with several other persons, including that trustee. The issue then is this. Are the Causes of Action identical, in the sense that the 'same evidence supports both the present and the former Cause of Action?' Vindication becomes a Sisyphean task if by adding conspirators the Cause of Action loses its identity when in fact the Goldens' role in the conspiracy is no wise altered in this second Complaint."

We are entirely in accord, and are in accord with its further conclusion: "The conclusion here is that the Cause of Action against the Defendants Golden, and [them] only, has once been litigated and the bar of res judicata obtains."

The facts relied on in the first case were that the

trustee, under the deed of trust, had fraudulently colluded with the Goldens to let them purchase the property at an inadequate price. By adding six more defendants in the second suit, the plaintiffs sought simply to magnify the extent of the fraud. So far as the Goldens are concerned however, the facts implicating them under the first action would be the same that implicate them in the second action. In both actions there is but one right asserted and one wrong alleged. The right was the Tomiyasus' ownership of their property which they sought to protect. The wrong was the unlawful conspiracy to defraud them of this property. The duty which the Goldens are said to have violated was to act in good faith in bidding for the property at the foreclosure sale and avoid any acts of conspiracy to defraud. Cf. Reno Club, Inc. v. Harrah, 70 Nev. 125, 132, 260 P.2d 304, 307, in which this court said:

"In that regard the primary right of Reno Club was its right to possession of the premises; the primary duty of Harrah was his duty to surrender possession and his delict or act of wrong was his refusal to do so. The facts from which these matters arose constituted the cause of action in the former suit. It is clear that the same right, duty and delict, supported by the same facts give rise to Reno Club's present claim for damages. It is not, then, a new cause of action which is presented * * *."

Thus the situation meets all tests as applied by this court and by other courts in determining whether the cause of action was the same in the two suits. There was one right in the plaintiffs and one wrong involving that right on the part of the defendants. There was an identity of facts essential to maintaining the two suits. The asserted aggravation of the fraud by alleging additional facts does not alter the existence of the same facts essential to the two suits. Nor does the bringing in of additional parties who contributed additionally to the alleged fraud of the Goldens violate the requirement for identity of parties. If this were so, and if in a second suit against the Goldens for the same fraud, res judicata as a defense could be avoided by adding six additional defendants,

then if the Goldens were again successful they could be subjected to a third suit by the addition of two or three more defendants, and so on ad infinitum. Restatement of Judgments § 79 (i). See also 30A Am.Jur., Judgments § 397.

In view of the foregoing, and of our conclusion that the judgment in the first action operated as res judicata in the second action, it is unnecessary for us to pursue the argument of respondents that in any event the action is barred by collateral estoppel.

Our brother Gabrielli disagrees and is filing a dissenting opinion which he has submitted to us. It is patent that he has misread the court's opinion in the first case. Our holding in that case was simply that mere inadequacy of price, without proof of some element of fraud, unfairness, or oppression that could account for and bring about inadequacy of price was not sufficient to warrant the setting aside of the trustee's sale on foreclosure of the deed of trust. We held that nothing in the record suggested fraud, conspiracy, collusion, or other fault, and we reversed the judgment setting aside the sale. The converse of that holding is equally clear, namely, that had there been fraud, conspiracy, collusion, or other fault resulting in the inadequacy of price the judgment of the trial court would have been affirmed. The dissenting opinion entirely misses the significance of the foregoing.

The summary judgment is affirmed with costs.

THOMPSON, J., concurs.

MCNAMEE, C. J., being unable to act by reason of his hospitalization, the Governor commissioned Honorable John E. Gabrielli, Judge of the Second Judicial District, to sit in his place.

GABRIELLI, D. J., dissenting:

I dissent.

The conscience of this writer is shocked that in this age, an 82 year old Japanese resident of this State since 1916, and his family can be treated with such injustice and be deprived of their real property unquestionably

148

valued in excess of $200,000.00 (excluding the value of the land sales contracts, upon which there is a balance due Plaintiffs in the sum of $59,749.38 not including interest, which payments have been demanded by Defendants) by foreclosure of Second Trust Deed for the sum of $18,025.73 subject to a First Trust Deed of $38,968.29 which according to the present complaint was accomplished by means of an alleged conspiracy to defraud and deprive Plaintiffs of the aforesaid property by Defendants—some of whom were in a fiduciary relationship with Plaintiffs and others were supposed to be protecting their interests throughout said proceedings. Full tender of the amount due plus costs was made to the purchasers within a reasonable time after the foreclosure sale which was rejected. This case crys out for relief, a meaningful day in Court and justice according to well established rules of law. This Court in Moore v. Prindle, (July, 1964), 80 Nev. 369, 394 P.2d 352, a case involving forfeiture under a contract of sale, reversed the lower Court's declaration of forfeiture and in doing so stated, "Moore tendered the amount necessary to cure the default within a reasonable time. As was said in the case of Mosso v. Lee, 53 Nev. 176, 295 P. 776, * * * there can be no doubt in this age, even where time is of the essence of a contract to convey real estate, coupled with a provision of forfeiture, but that a Court of equity will grant relief from a default and a declaration of forfeiture if the condition be subsequently performed, or tendered, without unreasonable delay, where no circumstances have intervened that would render it unjust or inequitable to give such relief." This language is fully applicable in all respects to the instant case.

In this writer's humble opinion the majority opinion here, fails in several respects, to-wit:

(1) Fails to give adequate consideration to a *realistic* appraisal of the specific allegations of the present complaint as compared to the complaint of the first action referred to in the majority opinion. Instead, Respondents and majority opinion have focused their entire attention on a statement of the facts made by this Honorable Court in its opinion in Golden v. Tomiyasu, 79

Nev. 503, 387 P.2d 989, numbered (1) through (10). The majority opinion has gone through this complaint and simply counted that the word "fraud" and similar terms appear about "40 odd times" as against a few times in the first complaint, then the Court places the bare allegations on a scale, somehow weighs the allegations per wordage rather than by their meaning in context (without any evidence one way or another and if the Court is taking judicial notice of the matters in issue in the former suit, it can't properly do so, such matters have to be pleaded and proved in this action before they can be considered and that has not been done at this stage of the proceedings) and concludes generally "fraud was the basis of the relief sought" in both actions therefore res judicata applies.

(2) Fails or at the most superficially considers the issues actually litigated in the first action as compared to new issues alleged in the present complaint and holds that they are the same, or if not, could have been litigated within the issues of the original complaint which as hereafter developed could not have been so litigated and in truth and in fact were not litigated, because they were not specifically alleged and no one paid any attention to the vague fraudulent verbage of the earlier complaint including the trial judge, defense and plaintiffs' attorney and this Court in its opinion on the first case.

(3) Fails to give any consideration whatsoever to lack of identity of parties between the two actions—except to generally state "vindication becomes a Sisyphean task if by adding conspirators the cause of action loses its identity when in fact the Goldens' role in the conspiracy is no wise altered in this second complaint" and "by adding six more defendants in the second suit, the Plaintiffs sought simply to magnify the extent of the fraud". The opinion totally ignores that with the addition of the six more parties unlitigated issues, under *another* cause of action have also been added inextricably involving the Goldens in a new light, to-wit: the tort of conspiracy to defraud and maliciously defrauding Plaintiffs under the reasoning of Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979, wherein the lower Court granted a motion

for summary judgment in favor of Defendants pointing out that the Defendants had a legal right to do each of the actions complained of. On appeal to this Court the case was reversed, and it was held that acts which otherwise may be lawful become actionable when done in pursuance of a conspiracy to hurt another. Applying this here the acts of Goldens and Trustee (not a party to first action) in the prior action were found not to be sufficiently improper or irregular by this Court to set the sale aside but those same acts when combined with the new parties and the conspiracy allegations of the present complaint may become improper and actionable.

(4) Fails to consider what effect (if the Goldens are dismissed now) a possible judgment against the remaining defendants who are not parties to this appeal and who have appeared in the Court below and are at issue now for trial will have in future rights of *all* the parties concerned and future possible litigation in such event; this Court's expressed fears that if res judicata is not now rigidly applied, that if the Goldens should prevail in this second lawsuit, that then "they could be subject to a third suit by the addition of two or three more defendants and so an ad infinitum" is unrealistic in this practical world because, it is quite evident to this writer at least, the present complaint is all inclusive in all realistic respects.

In dissenting this writer is generally in accord with the recitation of facts, analysis and authorities as contained in Appellants' Opening and Reply Briefs on file on this appeal.

The only matters necessary to be examined on this appeal are the complaint filed in the instant cause, the complaint filed in the first case between the Tomiyasus and Goldens only, portions of the Record on Appeal in the last mentioned case to this Honorable Court being Golden v. Tomiyasu, No. 4625 on this Court's docket; and the opinion of this Honorable Court therein, appearing at 79 Nev. 503, 387 P.2d 989, decided December 23, 1963.

In the last mentioned litigation, the Tomiyasus sought, unsuccessfully, as it turned out, to set aside a

Trustee's Sale on Foreclosure on the principal ground of gross inadequacy of price paid by the Goldens as to shock the conscience coupled with various formal irregularities attendant upon the mechanics of the sale.

While the complaint in the earlier case may have mentioned the word "fraud" a time or two, all of the allegations of the complaint and the context of the usage make it clear beyond any doubt that the fraud spoken of was that species of fraud denoted as "constructive", "imputed", or "implied" fraud. These terms are descriptive of a certain concept arising out of actions in equity, and the meaning of such terms is always to be distinguished from actual or real fraud.

Actual or real fraud necessarily involves the element and proof of deceit practiced upon the party wronged —deceit employing a knowing misrepresentation or concealment of truth—and for which the party wronged is not dependent upon any form of equitable relief, but for which he can demand restitution or damages as a matter of right in an action at law. An entirely different cause of action. The numerous cases drawing these distinctions between constructive, implied or imputed fraud, and actual fraud, are collected in 8A Words and Phrases, under the term "Constructive Fraud", particularly at pages 537–539, and pages 39–41 of the 1963 Pocket Part. See McCray Refrigerator Company v. Uramoto, 79 Nev. 294, 382 P.2d 600, 96 A.L.R.2d 1339, for a good example of a case involving constructive fraud where fraud was "imputed" to the defendant who had signed as a witness to the signature of a guarantor, actually believing that the signature of the guarantor was valid, when, in fact, it had been forged. On the basis of judicially imputed fraud, the defendant witness was held liable for default of promisor.

At any rate judgment on the merits in favor of the Tomiyasus was reversed and remanded for the entry of judgment in favor of the Goldens, this Court saying, in effect, that such irregularities as were established were not prejudicial to the Plaintiffs and that mere inadequacy of consideration was not a sufficient ground for setting aside a sale on foreclosure. The action was

equitable in its nature, seeking relief from a forfeiture. In so holding, this Court specifically disapproved and rejected the principle stated in Dazet v. Landry, 21 Nev. 291, 298; 30 P. 1064, upon which the Tomiyasus had almost entirely relied in predicating their cause of action. This Court's language appears in 30 P., at page 1067, "* * * As a rule, something more than mere inadequacy of price must appear before a sale will be set aside, *unless the inadequacy be so great as to shock the conscience.*" The inadequacy relied upon by the Tomiyasus was $18,025.73 as against a quarter of a million dollars. In so rejecting this Court virtually wiped out the principal basis upon which the original action was predicated. In other words, as it turned out that action was largely predicated on rights that did not actually exist because of this Court's repudiation of its authoritative statement in Dazet v. Landry, which counsel for Plaintiffs could not reasonably anticipate would occur.

The present action is one at law, wherein the Plaintiffs are suing the Defendants, Goldens, plus six others for malicious conspiracy to defraud, and the defrauding of the Plaintiffs of their property.

The allegations of the present complaint are lengthy, and will not be set forth here, but their substance alleges, in three causes of action, that the Respondents and the other Defenedants entered into a conspiracy to defraud the Appellants of their property by deceiving the Appellants into believing that refinancing had been obtained for the indebtedness for which the Appellants' property was to be sold, and maintaining the deception until such time as it would be impossible for re-financing to be obtained from other sources to avoid the sale, while simultaneously maneuvering it so that the Respondents would be enabled to bid the property in for a bare portion of its value, thereby defrauding the Appellants of their property, and praying that the sale and Trustee's Deed be set aside and the Appellants restored to their property and the Respondents to have the return of the consideration paid at the sale; that the damages sustained by the Appellants, in the event

the sale be not set aside, were $250,000.00; that the fraudulent and conspiratorial aims and acts of the Respondents were maliciously held and performed, by reason of which Appellants are entitled to an award of punitive or exemplary damages in the amount of $250,000.00.

The four assignments of error on this appeal are as set forth in the majority opinion, which by this reference are incorporated herein as if set forth at length.

This writer finds the conclusion is inescapable that the present case involves a different cause of action than that which was previously litigated.

The applicable legal principles here involved may be summarized as:

(1) To sustain a plea of res judicata, it is essential that the causes of action be identical;

(2) A cause of action consists of the facts establishing the Plaintiffs' primary right and the Defendants' corresponding primary duty, plus the facts which constitute the Defendants' act of wrong;

(3) The form of relief prayed for, whether it is the same, or different, in the two cases, is not material, because the type of relief sought is not part of the cause of action;

(4) The test of identity of causes of action is whether or not the same evidence will equally support both causes of action;

(5) The fact that the first and second causes of action might have been joined in a single lawsuit does not justify application of the bar of res judicata where the causes of action are different and the second cause of action was not actually litigated or placed in issue in the first suit; and

(6) The party setting up the plea of res judicata has the burden of proving it, and if there is any doubt as to the scope and coverage of a prior judgment, that, in and of itself, constitutes a genuine issue of material fact which must go to the trier of the facts (in this case, the jury) along with the other factual issues in the case.

Cutting away the conjectures and the questionable

154

conclusions, these are the circumstances upon which Respondents rely in attempting to support the Summary Judgment in their favor.

(1) The complaint in the first case contained an allegation that officers of the Nevada Title Insurance Company and the Defendants, Goldens, conspired and confederated together to sell said land.

(2) In the opinion of this Court in *Golden v. Tomiyasu*, 79 Nev. 503, 387 P.2d 989, it was remarked, negatively; "nothing in the case warrants a conclusion of collusion to defraud the Tomiyasus, "and * * * "but nothing in this suggests fraud, conspiracy, collusion or other fault."

(3) Extensive discovery was engaged in prior to the trial, pursuant to Rule 15(a) and (b), NRCP, Appellants could have sought to amend their complaint in the first suit, either before, during, or after trial, if in fact the scope of the purported conspiracy was as broad as Appellants now contend.

The matters set forth in (1) are generally summarized hereinabove indicating the general substance of the allegation in the first complaint. It is clear to me that the alleged breach of a contractual fiduciary obligation by the Trustee did not raise any issue of actual fraud, mala fides or intentional tort on the part of the Respondents or anybody else.

Authoritative support for this writer's position is derived from the trial judge's summation of the gist of the first action when defendants' counsel attempted to inquire into the issue of bad faith on the part of the Trustee when the Judge stated; "Alright now, the gist of that charge would be that one of their officers or agents, went out and secured Mr. Golden to buy this property. That's the charge. *That would be the only element of conspiracy here that could possibly exist.*" To which counsel for the Goldens said *"True"*. Thus effectively establishing the law of the case that the cause of action for actual fraud and malicious conspiracy to defraud was determined not considered sued on in the former case and was not litigated. So that the majority's reasoning here, that these issues "might with propriety,

have been litigated and determined" simply is not applicable to this case, and new cause of action. It should be borne in mind also that the alleged co-conspirator in the first action, the trustee Title Company, was not a named party further indicating that the conspiracy allegations of the First Complaint were mere window dressing for the real cause of action alleged and litigated, to-wit: Shocking inadequacy of price coupled with irregularities in the mechanics of the Trustee Sale.

Further support for this writer's position is derived from the pronouncement of this Court in the earlier case: "This was an action to set aside a trustee's sale on foreclosure of a deed of trust. We hold that mere inadequacy of price, without proof of some element of fraud, unfairness or oppression as accounts for and brings about the inadequacy of price is not sufficient to support a judgment setting aside the sale."

But this is not to say that the Plaintiffs had litigated the matters of fraud, unfairness or oppression. That there had been no such litigation is shown further by the Court's opinion, where it expressly emphasized this fact at 387 P.2d 994, at page 994: "In the present case counsel for Respondents, in oral argument, stated that he did not claim fraud or conspiracy *but only collusion* between the trustee and the high bidder. This did not exist." A judgment should be construed with reference to the issues raised in the case *and which are intended to be decided* and the scope of the judgment is not to be extended beyond the issues raised, litigated and determined. See 49 C.J.S. 872, § 441.

The inquiry here is simply whether the causes of action are the same. In the case of Bond v. Thruston, 60 Nev. 19, 24, 98 P.2d 343, 345, 100 P.2d 74, this Court approved the test in Pomeroy Code Remedies, 4th Ed., Page 460 in Section 347, as to what constitutes a cause of action: "In Pomeroy Code Remedies, 4th Edition, on page 460, in Section 347, the author discusses at length the elements constituting a cause of action, and concludes such paragraph with the statement that 'The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the facts from

which the Plaintiff's primary right and the Defendant's corresponding primary duty have arisen, together with the facts which constitute the Defendant's delict or act of wrong.'

"And on page 465, in Section 349, the same author says: 'If the facts alleged show one primary right of the plaintiff and one wrong done by the defendant which involves that right the plaintiff has stated but a single cause of action, no matter how many forms and kinds of relief he may claim that he is entitled to, and may ask to recover; the relief is no part of the cause of action.' " See also, Reno Club, Inc. v. Harrah, 70 Nev. 125, 260 P.2d 304; Silverman v. Silverman, 54 Nev. 152, 169, 283 P. 593, 598; Miller v. Miller, 54 Nev. 44, 52, 54 Nev. 465, 3 P.2d 1069, 6 P.2d 1117, 11 P.2d 1088. In the case of Griggs v. Griggs, 214 S.C. 177, 51 S.E.2d 622, Sec. 519, pages 554–5 of Pomeroy on Remedies is quoted as follows: "Every action is based upon some primary right held by the Plaintiff and upon a duty resting upon the Defendant corresponding to such right. By means of a wrongful act or omission of the Defendant, this primary right and this duty are invaded and broken, and there immediately arises from the breach a new remedial right of the Plaintiff, and a new remedial duty of the Defendant. Finally, such remedial right and duty are consummated and satisfied by the remedy, which is obtained through means of the action, and which is its object. Now, it is very plain that, using the words according to their natural import and according to their technical legal import, the 'cause of action' is what gives rise to the remedial right, or the right of remedy, which is evidently the same as the term 'right of action' frequently used by judges and text-writers. This remedial right, or right of action, does not arise from the wrongful act or omission of the defendant, the delict alone, nor from the plaintiff's primary right and the defendant's corresponding duty alone, but from these two elements taken together, the 'cause of action', therefore, must always consist of two factors, (1) the plaintiff's primary right and the defendant's corresponding primary duty, whatever be the

subject to which they relate—person, character, property or contract; and (2) the delict, or wrongful act or omission of the defendant, by which the primary right and duty have been violated." Employing this means of analysis, it can readily be seen that in the first lawsuit between the Tomiyasus and the Goldens, the plaintiffs' primary right arose out of the contractual obligations contained in the Deed of Trust, and the statutory covenants adopted thereby. Essentially, these rights were that the sale would be so publicized, so conducted and so consummated that the property which secured the indebtedness would not be sacrificed for a small portion of its value. The primary duty of the Goldens was an equitable obligation to restore the property to the plaintiffs in the event the sale had not been publicized, conducted and consummated as required under the said contractual obligations and statutory covenants in the deed of trust, for, otherwise, the Goldens would have been enriched unjustly at the expense of the Tomiyasus. See Magill v. Lewis, 74 Nev. 381, 333 P.2d 717, generally on unjust enrichment where statutory requirements have not been followed. That the Plaintiffs will not depend upon the same evidence (although, concededly some of the same circumstances and transactions have in general given rise to both cases, this is not enough to rigidly apply the doctrine of res judicata, and this Court so held in Casey v. Musgrave, 72 Nev. 31, 292 P.2d 1066) as was adduced in the former case is made manifest to this writer by the allegations contained in their present complaint. There are genuine issues of fact in this case which cannot be decided on motion for summary judgment. For example, whether or not the defendants Golden, and the remaining defendants, did enter into a malicious conspiracy to defraud the plaintiffs of their property, and whether they performed the acts in furtherance of that conspiracy in fraud of the plaintiffs' rights and to the damage of the plaintiffs as alleged in plaintiffs' complaint. Also, there are allegations in the present complaint concerning matters which occurred subsequent to the foreclosure sale which were not alleged nor litigated in the first

action. Matters to which when an attempt was made to inquire Defendants' counsel objected stating "I do not feel this is material to the issues of this case. This is all subsequent to the issues raised by the pleadings, that is the sale", and effectively prevented further interrogation into those issues which are now before this Court. The Defendants Golden have not urged that such questions do not exist, nor could they do so with any merit. Their position below was simply that any inquiry into these factual questions is foreclosed by their plea of res judicata.

The law is well established that whenever there is any doubt as to the scope and coverage of a prior judgment, that, in and of itself, constitutes a genuine issue of material fact, which must be decided by the jury along with other factual issues in the case. The rule is summarized in 6 Moore's Federal Practice, pp. 2257, 2258, as follows: "Under general basic principles that control the grant or denial of summary judgment, a motion for summary judgment on the basis of a prior judgment should be denied if the prior judgment has no res judicata or collateral estoppel effect between the parties to the present action; or if there is a genuine issue of material fact as to the validity of the prior judgment, its scope and coverage, privity, or whether it was on the merits so that it is controlling in the case at bar."

See Guam Investment Co. v. Central Building, Inc., 9 Cir., 288 F.2d 19, for an illustrative case.

As to the assertion of Respondents that Appellants could have amended the Complaint in the first case to allege the tort of fraud and deceit, conspiracy to defraud and malicious conspiracy, the matter of amendment was something which was within the choice of the plaintiffs there—it was not a duty.

This Court said in Reno Club v. Harrah, 70 Nev. 125, 260 P.2d 304, "That the cause of action might have been joined in a single suit does not bring the case within the bar of res judicata, the causes of action are different and since the point was not actually litigated or placed in issue in the earlier suit, that adjudication is no bar." Citing Gulling v. Washoe County Bank, 29 Nev. 257,

89 P. 25, McIntosh v. Knox, 40 Nev. 403, 165 P. 337, Weisheyer v. Weisheyer, 54 Nev. 76, 6 P.2d 439, Wolford v. Wolford, 65 Nev. 710, 200 P.2d 988.

The law of Nevada is that when a plaintiff mistakenly (here in reliance upon Dazet v. Landry,) believes a certain remedy is open to him, which is not, an adverse decision as to that matter does not foreclose his right to pursue the remedy which he does have. The point has been squarely decided in Gibson v. Milne, 1 Nev. 526; Casey v. Musgrave, 72 Nev. 31, 292 P.2d 1066; and Kassabian v. Jones, 73 Nev. 274, 317 P.2d 572. See also Wood v. Champion Paper & Fibre Co., D.C., S.C., 157 F.Supp. 393, wherein the Federal Court stated "Because the plaintiff undertook to pursue a course which was not open to him or adopt a supposed remedy which did not in reality exist, he is not now precluded from following the only course open to him and seeking the only remedy he had at the outset * * * there cannot be said to be an election of remedies unless there are separate and distinct remedies in existence when the action is begun."

The Respondents in their Answer Brief and the majority opinion purport to treat the question concerning the lack of identity of parties but in this writer's opinion they have not attempted to answer the far-reaching and gravely perplexing questions which will arise in this case if the summary judgment below is allowed to stand.

It is fundamental that one of the requirements for the application of res judicata is identity of parties 50 C.J.S. Judgments § 601. Smith v. Gray, 50 Nev. 56, 250 P. 369.

Ordinarily the issue of lack of identity of parties arises where a party is sought to be bound by a former decision and he claims that he was not a party to the former action, nor in privity with a party to the former action, and that his interests were not represented in the litigation. See, for example, Rutherford v. Union Land & Cattle Co., 47 Nev. 21, 213 P. 1045, where it was held an interpleader action was not a suit in rem and judgment therein could not affect the rights of third parties not before the Court.

In the instant case, the issue of lack of identity of

parties arises in a different way. The Defendants Golden claim that they are entitled to avail themselves of the doctrines of res judicata despite the fact that other parties are joined with them as defendants in this action.

It certainly cannot be contended that these additional parties are in privity with the Defendants Golden, nor are the additional defendants mere nominal parties.

The Plaintiffs have a going lawsuit against each and every defendant sued in the complaint; Nevada Title Company, a Nevada Corporation, United Mortgage Company, a Nevada Corporation, Lester H. Berkson, Hector J. St. Pierre, Merle P. Adams, and David P. Boyer, in addition to the Defendants Golden. Responsive pleadings have been filed and the case is at issue. The action is one at law for conspiracy to defraud, fraud, and malicious conspiracy and injury.

If the plaintiffs prove the allegations of their complaint, they will be entitled to be restored to the property of which they have been defrauded, or, in the alternative, the compensatory damages, and to punitive damages.

If the Defendants Golden were to prevail in their claim of res judicata, and summary judgment in their favor be affirmed, by this Court how could the plaintiffs be afforded complete relief upon the trial of the case against the remaining defendants? Could the trial court declare the trustee's deed to the property to be null and void because it was obtained through the fraud of the members of the conspiracy, including the Goldens, when the Goldens are not parties to the action anymore?

Again, if the case is submitted to the jury on the issues of damages, compensatory and punitive, how can justice be served if the jury is not entitled to bring in an award against the persons actually occupying the premises maliciously and fraudulently obtained?

And what about the rights of the remaining defendants under our Uniform Joint Obligations Act (101.010 through 101.090), Nevada Revised Statutes?

Consider, also, the question of third-party practice under Rule 14 of the Nevada Rules of Civil Procedure.

Clearly, any one of the remaining defendants ought to have a right to bring the Goldens back into the litigation as persons "not a party to the action who is or may be liable to him for all or part of the Plaintiffs' claims against him."

The foregoing procedure would, in turn, make operative the provisions of Rule 14 that "The Plaintiff may assert any claim against the third-party Defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff."

These matters are more than mere procedural difficulties—they are an insoluble procedural snarl. The simple way, and the only way, to get rid of this snarl is to keep the Goldens in this lawsuit.

This writer is of the opinion that there is merit to Appellants' position that the Goldens should be estopped to raise the plea of res judicata, under the holdings of: Gamble v. Silver Peak Mines, 35 Nev. 319, 133 P. 936, and Lunsford v. Kosanke, Cal.App. 1956, 295 P.2d 432, but will not be discussed further here.

It must always be borne in mind that the burden of establishing the lack of a triable issue of fact is upon the moving party; that on a motion for summary judgment the trial court is precluded from drawing any inferences favorable to the moving party, and every favorable intendment must be given to the party against whom the motion is made; and that the purpose of Rule 56 is not to cut litigants off from their right of trial by jury if they really have issues to try. Among the numerous Nevada cases so holding are the following: Parman v. Petricciani, 70 Nev. 427, 272 P.2d 492; Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979; and Abbott v. Miller, 80 Nev. 174, 390 P.2d 429.

Finally, it is the fundamental rule that in passing on a motion for summary judgment under Rule 56, the Court must not undertake to decide questions of fact—it is only authorized to decide whether such questions exist, and the existence of such questions *precludes* the granting of summary judgment, as was held, among other cases, in the following: Bynum v. Frisby, 70 Nev.

535, 276 P.2d 487; and Moore v. Moore, 78 Nev. 186, 370 P.2d 690.

In conclusion the bar of res judicata (nor collateral estoppel) does not apply to this case because the causes of action in the two cases are not the same and for lack of identity of parties and the summary judgment should be reversed. The record is abundantly clear, that any issue of fraud and conspiracy was *not* litigated at the former trial. A substantial question exists as to what was litigated in the former case and the only proper course open is for the question to be decided in the lower Court, upon a full trial on the merits, and not by way of summary judgment.

This writer is impressed with the following statement of general policy declared in Levee District No. 4 of Dunklin County v. Small, Mo.App. 1955, 281 S.W.2d 614, wherein the Court stated: "In judicial efforts to achieve the primary purpose and attain the broad objective of all litigation, which is simply and succinctly stated, to do justice * * * (citing cases) * * * no principle has found more universal acceptance than that each case must rest and be ruled upon its own particular facts * * *.

"If we are to do more than render mere hypocritical lip service to the basic idea that our primary duty is to litigants rather than to counsel who represent them * * * (citing cases) * * * and to the overriding policy of the law that the end of all litigation is to do justice, we cannot escape the conclusion that, upon the particular facts of the instant case the judgment of dismissal should be set aside."

In the instant case, the Appellants have not had their day in Court on the causes of action alleged in their present complaint and the interests of justice requires that Plaintiffs be accorded that day to demonstrate, if they can, that they should not be subjected to the rigors of res judicata unless and until it is clearly demonstrated that their right to litigate this case has indeed been foreclosed.